UNITED STATES, Appellee,

v.

Archie L. THOMPSON, Private First Class, U. S. Army, Appellant.

No. 34,117.
SPCM 12129.

U. S. Court of Military Appeals.

May 8, 1978.

*Colonel Robert B. Clarke* and *Steven J. McAuliffe, Esquire,* argued the cause for Appellant, Accused. With them on the briefs were *Lieutenant Colonel John R. Thornock* and *Captain D. David Hostler.*

*Major Michael B. Kennett* argued the cause for Appellee, United States. With him on the briefs were *Colonel Thomas H. Davis, Major Steven M. Werner,* and *Captain Ronald A. Warner.*

Opinion of the Court

COOK, Judge:

Appellant was convicted by special court-martial of possession of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The substance was found in appellant's barracks room, which he shared with Private Hunter. After the Government presented its evidence on the merits, trial was delayed because Hunter, whom the defense had anticipated calling as a witness, had absented himself from the witness' waiting room. The circumstances resulting in his departure gave rise to the granted issue, which questions the correctness of the trial judge's denial of a defense motion for a mistrial.

Hunter had been separated from the service prior to trial. The defense expected

him to testify that the marijuana belonged to him and appellant had no knowledge of its presence in the room at the time it was found. On February 24, 1976, the first day of trial, the court recessed after the Government had presented its evidence, but did not reconvene because Hunter had departed the area before he was called as a witness. After the adjournment, a court member, Major Dorsey, approached the judge to express his desire to be with his unit, which was then in the field. In the course of the conversation, the court member stated that the witness "can't be much of a witness or he would be present."

An out-of-court session was conducted on February 25 to determine the reason for the witness' unexpected departure. Trial counsel disclosed he had interviewed the witness in the presence of defense counsel and had advised him of his rights against self-incrimination. Counsel had also telephoned Special Agent Youngblood, who had investigated the case, to inform him of Hunter's presence. Agent Youngblood thereupon contacted the deputy staff judge advocate to obtain advice as to the propriety of interviewing Hunter. Youngblood was advised that he could interview Hunter if he told Hunter that he was not required to speak with him. Youngblood went to the courtroom area and found Hunter; they went to a nearby office to talk. Youngblood testified that, after he had advised Hunter of his right to refuse to speak to him and Hunter had agreed to be interviewed, he told Hunter that, because he was a civilian, the military could not prosecute him; but, the FBI might possibly question him and the decision as to whether he would be prosecuted would be made by the United States Attorney. Youngblood asserted that he interviewed Hunter at this time because his previous efforts to locate him had been unsuccessful.

During this out-of-court session, the trial defense counsel moved for a mistrial on the basis of the witness' absence. The military judge, prior to ruling on the motion, accepted an offer of proof that Hunter had been contacted on February 25 and he expressed an unwillingness to testify. Commenting upon the action of the Government, the

military judge rejected a contention that an improper motive should be ascribed to the individuals involved, but stated:

I don't perceive any impropriety on any of their parts. I do, however, feel that the interrogation of the witness, Hunter, while he was waiting to testify in this trial was ill-conceived and the result of poor judgment and lack of thought. If it were deliberate on their parts, it could not have been better calculated to frighten Hunter away from testifying in this trial regardless of how pure their motivations might have been and I believe that a little bit of advance thought on the part of all concerned would have made that obvious. Now, the actions of the government in this case are error, but the error is prejudicial to the accused only if Hunter, in fact, does not testify in this trial and if the prejudicial effect of the delay on the court members, as exemplified by the remark by Major Dorsey, can be corrected by proper instructions. I believe it can.

Thus, he continued the case to allow an inquiry into whether Hunter would agree to testify.

On March 5, the out-of-court session reconvened with Hunter present. He testified that on February 24 he had been prepared to take the stand and testify that the marijuana belonged to him but he had changed his mind during the interview by Youngblood. The out-of-court session was ended and the court was opened before the court members. At this point the military judge gave the members the following information and instructions:

The witness was called as a witness for the defense. The fact that the witness left the courtroom area and was not available to testify was in no way the fault of the defense. I determined as fact that the absence of the witness was due to an improper act of an agent of the government, and you are instructed that you may not import any lack of credibility to the witness to the fact that he was absent.

After the instructions, the judge disclosed the remark that Major Dorsey had made as to the credibility of the absent witness and

asked the members if they could follow his instructions "to the letter." All responded in the affirmative. Defense counsel specifically questioned Major Dorsey, who maintained that in view of the military judge's statement and instructions, he no longer adhered to his original opinion as to the credibility of the missing witness. Nevertheless, defense counsel reasserted his motion for a mistrial, which was, at this time, denied by the military judge. On resumption of the proceedings as to the merits, Hunter testified as a defense witness. He stated the marijuana found in the room belonged to him, and the accused had had no prior knowledge of its presence. In his final instructions to the members before they retired to deliberate on findings, the judge repeated the instructions relating to the relationship of the Government's misconduct and Hunter's absence on February 24.

██ We share the judge's view that the time, place, and manner in which Hunter was interviewed "could not have been better calculated to frighten Hunter away." Such conduct is reprehensible. A mistrial, however, is a drastic remedy and "the surrounding circumstances must demonstrate a manifest necessity to terminate the trial to preserve the ends of public justice." *United States v. Simonds*, 15 U.S.C.M.A. 641, 644, 36 C.M.R. 139, 142 (1966). Whether the circumstances warrant that drastic course rests within the discretion of the trial judge; the judge's decision will not be overturned on review unless it constitutes an abuse of that discretion. *United States v. Richard*, 7 U.S.C.M.A. 46, 21 C.M.R. 172 (1956).

██ Our examination of the record convinces us that there was no abuse of such discretion. Government interference with the defense right to obtain a witness may justify reversal of a conviction,[1] but here the defense obtained the very witness it wanted and he gave the very testimony the defense expected. The only defense complaint is that apparent uncooperativeness irreparably diminished his credibility. Had the matter been left unexplained, the claim

might have substance, but the trial judge's instructions, which were all the court members knew of the matter, were to the effect that the absence of the witness resulted exclusively from misconduct by the Government. Consequently, the basis for a possible inference adverse to Hunter's credibility that the court-martial might have drawn was eliminated. Further, we are convinced that Major Dorsey's comment did not reflect so deep-seated a prejudice against Hunter because of his absence that it would not yield to the judge's explanation. *Cf. United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954). As censurable as the Government's conduct was, the incontrovertible fact is that the appellant received a fair trial and, while inconvenienced, he was not deprived of any right warranting invalidation of his conviction. *See United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 353 (1976); *United States v. Crow Dog*, 532 F.2d 1182 (8th Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

PERRY, Judge (dissenting):

In my view, the admittedly laudable efforts of the military judge to remove possible prejudice occasioned by the government's conduct were inadequate. Major Dorsey's condemnation of the absent witness constituted a clear indication of his rejection of that witness as unworthy of belief. While it is not clear that he communicated to the other jurors his displeasure concerning the absence of the witness, he was forthright in his expression to the judge that the witness lacked credibility. Continuance of a trial already commenced on February 25, to March 5 and the giving of cautionary instructions were, in my view, inadequate to remove from the minds of the court members the prejudicial impressions flowing from the absence of the witness which, as the trial judge concluded, was occasioned by erroneous governmental action. I, therefore, respectfully dissent.

1. *See United States v. Reese*, 561 F.2d 894 (D.C.Cir. 1977).