UNITED STATES, Appellee,

v.

Charles A. ROSSER, Specialist Four,
U.S. Army, Appellant.

No. 35,524.
SPCM 12602.

U. S. Court of Military Appeals.

March 26, 1979.

Appearances: For Appellant—*Captain Julius Rothlein* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Captain James Recasner, Captain Willard E. Nyman III* (on brief); *Colonel Robert B. Clarke, Captain Buren R. Shields III.*

For Appellee—*Captain Glen D. Lause* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Captain Douglas P. Franklin* (on brief); *Major Steven M. Werner.*

## Opinion of the Court

FLETCHER, Chief Judge:

The appellant was tried by a special court-martial composed of a military judge and members for various alleged violations of the Uniform Code of Military Justice.[1] He chose to plead guilty to one specification of assault and not guilty to the remaining charged offenses. The military judge found the appellant guilty, in accordance with his plea, of the single specification of assault. After trial on the merits, the court members found the appellant guilty of the remaining specifications, including one specification of assault which they slightly altered in form. He was sentenced to a

---

1. He was charged with six specifications of assault, in violation of Article 128, Uniform Code of Military Justice; two specifications of wrongful communication of a threat, in violation of Article 134, UCMJ; one specification of disrespect to his superior commissioned officer, in violation of Article 89, UCMJ, and one specification of willful disobedience of a lawful command from his superior commissioned officer, in violation, of Article 90, UCMJ, 10 U.S.C. §§ 928, 934, 889, and 890, respectively.

bad-conduct discharge, 6 months' confinement at hard labor, forfeiture of $249 pay per month for 6 months and reduction to E–1. The convening authority approved the sentence as adjudged. The United States Army Court of Military Review affirmed the findings and sentence.

Prior to argument on findings, the defense counsel made a motion for mistrial [2] based on the alleged activities of the appellant's company commander during the court-martial and the conduct of a member of the court prior to its assembly and during the voir dire portion of the court-martial proceedings. After a hearing on this motion, in accordance with paragraph 56e (2), Manual for Courts-Martial, United States, 1969 (Revised edition), the military judge denied this motion. Review has been granted by this Court on the following issue:

WHETHER THE TRIAL JUDGE SHOULD HAVE GRANTED A MISTRIAL UNDER THE CIRCUMSTANCES OF THE PRESENT CASE.

At the appellant's court-martial the following incidents took place. Captain Leibart, the appellant's company commander and accuser, was called to testify for the Government on a speedy trial motion raised by the defense. After his testimony was presented, he was instructed by the military judge not to discuss his testimony with anyone other than the two attorneys in the case and the accused. He was further instructed that if anyone attempted to discuss his testimony or that person's own testimony in the case with him, he must tell such person to stop and must report the circumstances to the trial counsel. Prior to the assembly of the members of the court for trial on the merits, Captain Leibart encountered an old acquaintance, Sergeant Major Webb, in the anteroom of the court. There, a conversation took place between the two which was overhead by several persons who were soon to be called as government or defense witnesses in the case. Though there was some dispute as to the particulars of the conversation, it was established that Sergeant Major Webb was asked by Captain Leibart why he was not wearing certain medals and insignia and he responded that he had done so in the past but he believed this would lead to his being automatically rejected from the court panel. Further conversation ensued concerning the status of Captain Leibart's unit, at which point the company commander indicated that things would be better off if he could get three particular individuals properly taken care of, or words to that effect.[3] Some time later the members were assembled by the military judge. During the instructions to the members prior to voir dire, the military judge instructed that if the members were aware of possible grounds for challenge (something which might reflect on their impartiality in this case) against themselves, they must disclose those matters even though they may believe that they were fully qualified to sit as court members. Moreover, they were instructed that if anyone attempted to discuss the case with them, they must immediately forbid him from doing so and report the circumstances to the military judge. After these instructions, the defense counsel asked the members about their personal acquaintance or familiarity with Captain Leibart. Sergeant Major Webb answered that he knew this officer from inspections performed at a certain training detachment. No mention was made by Sergeant Major Webb at that time of his conversation with Captain Leibart earlier that morning, nor did he disclose that he was not in full military uniform for the court-martial. The voir dire was concluded and no challenge was made by either party to the court-martial as to Sergeant Major Webb. During the remainder of the trial up to argument on findings, Captain Leibart stationed himself in the

---

**2.** *See* paragraph 56e, Manual for Courts-Martial, United States, 1969 (Revised edition).

**3.** Sergeant Major Webb denied that such a statement was made or that he heard it. Captain Leibart testified that he made such a statement to Sergeant Major Webb and that the Sergeant heard it. Other witnesses testified that the statement was made and they believed Sergeant Webb heard it.

same waiting room outside the court. There he was observed frequently eavesdropping on the proceedings and at one point looking in a courtroom window. Witnesses for both the Government and the defense were likewise present in this room and observed his conduct. According to Captain Leibart's own testimony, several witnesses approached him to complain of fear of bodily harm as a result of their anticipated testimony. He advised them to have the intestinal fortitude to stand up and say what happened. He did not bring these alleged threats to the attention of the court until his later testimony in explanation of his conduct.

The appellant's defense counsel at the court-martial stated four grounds in support of a mistrial. He first argued that the accuser in this court-martial, Captain Leibart, engaged in improper activity by stationing himself at the door of the courtroom and eavesdropping on the proceedings in the presence of expected witnesses. Such activities, he asserted, cast grave doubt on the ability of the court-martial to render a just verdict and had a chilling effect on the defense witnesses in the case. Second, the appellant's defense counsel claimed that Captain Leibart's conversations with government witnesses influenced their testimony adversely against the defense. Third, he asserted that Captain Leibart's communication with Sergeant Major Webb was grossly improper and the latter had an obligation to bring this conversation to the attention of the court. Fourth, trial defense counsel alleged that the actions of Sergeant Major Webb in concealing relevant information from the court as to his qualifications constituted fraud, justifying a declaration of mistrial.

In denying the defense motion for mistrial the military judge stated:

As to the first two grounds, Captain Leibart testified on the speedy trial motion in the case, not on the merits of the case. It is also evidence from your own search that no witness could be found and the inquiry from the Court indicated that no witness could be found that said that they were affected, or even would be affected if their Company Commander were sitting here in the courtroom, much less by sitting outside the courtroom on a very noisy day listening through the walls. For that reason your request for a mistrial as to those, on those two basis [sic] is denied. A voir dire was conducted of Command Sergeant Major Webb, in which you participated, and the court is convinced based upon his testimony, that he was not influenced by any statement that was made. It would appear that he was so impressed with it that he does not recall the statement being made, and I do not find any basis for which to grant a mistrial. The conduct of Sergeant Major Webb, to include the fact that he didn't wear his medals, now there has been no evidence presented to indicate that the conduct of the trial or the voir dire would have been any different. The president of the court, Lieutenant Colonel McNamara, also was highly decorated, the treatment of him because he had ribbons on his uniform, was no different from that given to other members of the court, nor was he challenged because he had a large number of ribbons. For that reason your request for a mistrial based on Command Sergeant Major Webb's conduct or omission of his medals from his uniform, is also denied.

## I

### Appellate Review of Denial of Motion for Mistrial

As a matter of military law, the decision to declare a mistrial is within the sound discretion of the military judge at the court-martial.[4] This Court will not reverse such a determination unless the military judge has abused his discretion under the particular facts and circumstances of the

---

4. *United States v. Thompson*, 5 M.J. 28, 30 (C.M.A.1978); paragraph 56e (1), Manual, *supra. See also Arizona v. Washington*, 434 U.S. 497, 506 n. 18, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), and *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

case before him.[5] An abuse of discretion cannot be readily defined in general terms so as to establish hard and fast rules applicable to all individual courts-martial; to do so would curtail the broad powers of the trial judge to act in response to the particular facts and circumstances as perceived by him at the trial level. Nevertheless, certain fundamental standards[6] must be met by the military judge in reaching his decision to avoid its classification on review as an abuse of discretion. For instance, the military judge must decide the motion in accordance with relevant principles of military law on fair trial as embodied in the Uniform Code of Military Justice, the Manual for Courts-Martial and appropriate case law. It is clear that the mantle of judicial discretion will not protect a decision based on the judge's arbitrary opinions as to what constitutes a fair court-martial. Likewise, the military judge must engage in a sufficient inquiry as a matter of law to uncover sufficient facts to decide the issue before him. Since such a motion may raise issues of crucial importance to the integrity of the military justice system, the military judge may not be satisfied with mere perfunctory conclusions in determining whether a military accused is receiving a fair trial. In addition, the application of law to the facts by the military judge must be reasonable in some objective sense to be upheld by this Court. Finally, a mistrial is a drastic remedy, but equally important in our mind is the affirmative responsibility of the military judge to insure the military accused a fair trial decided by impartial triers of fact and free from unlawful command influence.[7] Moreover, we believe it incumbent on the military judge to act in the spirit of the

Code by avoiding even the appearance of evil in his courtroom and by establishing the confidence of the general public in the fairness of the court-martial proceedings.[8] The failure of the military judge to meet such responsibilities may under particular facts and circumstances be found to constitute an abuse of his judicial discretion.

## II

### Appellant's Motion For Mistrial

■ Examination of the military judge's ruling indicates that he clearly utilized incorrect standards of law in denying this motion. The conduct of Captain Leibart was first challenged as prejudicial to the appellant in that it constituted unlawful command influence on both government and defense witnesses. The fact that Captain Leibart was a witness on a speedy trial motion rather than on the merits of the case in no way immunizes him from the codal prohibition against command influence.[9] The question to be decided is whether his conduct outside the courtroom could have influenced the testimony of the witnesses who observed it, and not whether his eavesdropping assisted him in preparing his own testimony. Secondly, the military judge in deciding this motion was clearly concerned only with the specific prejudice the appellant might suffer from the activities of Captain Leibart. His limited approach to this motion fails to take into consideration the concern of Congress and this Court in eliminating even the appearance of unlawful command influence at courts-martial.[10]

In the present case, Captain Leibart's presence can only be described as ubiqui-

5. See generally United States v. Thompson, supra at 30; United States v. Patrick, 8 U.S.C. M.A. 212, 24 C.M.R. 22 (1957); United States v. Batchelor, 7 U.S.C.M.A. 354, 22 C.M.R. 144 (1956), and United States v. Richard, 7 U.S.C. M.A. 46, 21 C.M.R. 172 (1956).

6. See generally R. J. Aldisert, The Judicial Process 759–76 (1976).

7. United States v. Thompson, 3 M.J. 168, 171 (C.M.A.1977); United States v. Graves, 1 M.J. 50, 53 (C.M.A.1975).

8. See United States v. Conley, 4 M.J. 327, 330 (C.M.A.1978).

9. See Article 37, UCMJ, 10 U.S.C. § 837.

10. See United States v. Fowle, 7 U.S.C.M.A. 349, 352, 22 C.M.R. 139, 142 (1956), and United States v. Hawthorne, 7 U.S.C.M.A. 293, 297, 22 C.M.R. 83, 87 (1956).

tous. He was the appellant's accuser and his company commander. He was also the company commander of several witnesses for the Government and the defense, and in charge of their transportation to the courtroom and their feeding while there. He testified for the Government on a speedy trial motion and expected himself to be witness for the Government on the credibility of a witness and the performance of the appellant. He openly communicated with a court member prior to assembly in the presence of witnesses to the court-martial on a matter directly related to the outcome of the trial. He entertained complaints of witnesses of threats of bodily harm without reporting these matters to the trial court. He was clearly observed by witnesses at the court-martial eavesdropping on the proceedings.

In the record of trial we find no justification as a matter of military necessity for Captain Leibart's continued monitoring of the appellant's court-martial proceedings. It is apparent that at the very least he lacked the proper regard for the "delicate balance" that must be maintained between military justice and command discipline.[11] His position as the appellant's accuser and a government witness further exacerbated the effect of his patent meddling in the proceedings of this court-martial. In light of his instructions from the military judge, his willingness to assume responsibility on his own for purported threats to witnesses, rather than immediately reporting them to the trial counsel, cannot be condoned. Finally, his communications to a court member are simply intolerable. The military judge's response to these activities dealt exclusively with the specific prejudice the appellant might have suffered from each individual act of Captain Leibart. We believe that he erred as a matter of law in deciding this motion without considering the total effect of such conduct on the appearance of fairness and freedom from command influence mandated by Congress and by our decisions for court-martial proceedings.[12]

■ Furthermore, we find the military judge erred as a matter of law in concluding that no actual prejudice inured to the appellant because no witness stated that he was affected or would be affected by Captain Leibart's actions. Military law has traditionally viewed such perfunctory statements from subordinates on the effects of command influence as inherently suspect, not because of the credibility of the witness but because of the difficulty of the subordinates in ascertaining for himself the effect of any attempted command influence.[13] The military judge's stated reliance on these perfunctory statements and his failure to more carefully examine the effect of command influence in this case was error.

■ The conduct of Captain Leibart was also challenged on the ground that it involved ex parte communications with a court member which were adverse to the accused. Captain Leibart was the accuser in this case and de jure,[14] if not de facto,[15] a party whose interest in the litigation was contrary to the appellant's. Private communications between a court member and a party, witness, or third person, which may be prejudicial to an accused, are strictly forbidden as a matter of military law. They are presumed prejudicial until the Government clearly and positively shows that the communication had no possible influence on the decision of the court.[16] The military judge determined from the testimony of Sergeant Major Webb that he was not influenced by the statement of Captain

---

11. *United States v. Littrice*, 3 U.S.C.M.A. 487, 491, 13 C.M.R. 43, 47 (1953). *See United States v. Navarre*, 5 U.S.C.M.A. 32, 37, 17 C.M.R. 32, 37 (1954).

12. *See* footnotes 7–11.

13. *United States v. Zagar*, 5 U.S.C.M.A. 410, 414, 18 C.M.R. 34, 38 (1955); *United States v.*

*Adamiak*, 4 U.S.C.M.A. 412, 419, 15 C.M.R. 412, 419 (1954).

14. Article 1(9), UCMJ, 10 U.S.C. § 801(9).

15. Captain Leibart's own testimony.

16. *United States v. Adamiak, supra* at 417–18, 15 C.M.R. at 417–18.

Leibart. In our opinion the military judge again relied too readily on the blanket assertion of a subordinate in rank that he was not influenced by the statement of his superior officer.[17] Moreover, in light of Sergeant Major Webb's conduct which will be subsequently discussed, we find the military judge was insensitive to the delicate sphere of appearances at stake in this motion.[18] This we conclude was error.

■ The final reason for declaration of a mistrial urged by trial defense counsel was the purported fraud on the court perpetrated by Sergeant Major Webb. In particular, it is alleged that he knowingly concealed his pretrial conversation with Captain Leibart as well as certain medals or insignias which may have led to his challenge as a member of the appellant's court-martial. The comments of the military judge indicate his conclusion from the voir dire of this member that he was not influenced by the pretrial statements of Captain Leibart. Furthermore, the presence of another highly decorated member on the court and of other ribbons on the uniform of Sergeant Major Webb convinced the judge that no challenge would have been forthcoming from the appellant in any event. We find the judge's reliance on these considerations as the basis for continuing with the court-martial to be unreasonable. No premium will be paid in the military justice system for lack of candor on the part of its members. Indeed, paragraph 62*b*, Manual, *supra*, requires full disclosure of *any* possible grounds for challenge by the court members regardless of their own belief as to their ability to sit as court members. Sergeant Major Webb's conduct falls far short of the full disclosure mandated by these general principles of military law. Moreover, paragraph 41*b*, Manual, *supra*, mandates that court members not fraternize and that they avoid any conduct which creates the appearance of prejudice. Finally, the relevance of another member's medals and insignia is illusory as to the real issue at stake in this motion, namely, the integrity of the court-martial. The prejudice in this case is thus apparent.

■ The military judge's ruling on the defense counsel's motion for mistrial was clearly erroneous in that he applied incorrect legal standards in reaching his decision. Likewise, his inquiry into the particular facts and circumstances of this case was so perfunctory as to provide an inadequate factual basis for his decision. Finally, we find the military judge was remiss in his affirmative responsibilities to avoid the appearance of evil in his courtroom and to foster public confidence in court-martial proceedings.[19] Under the particular facts and circumstances of this case, we find the military judge abused his discretion in denying the defense motion for a mistrial.[20]

The decision of the United States Army Court of Military Review is reversed as to the findings of guilty by the court members and the sentence. Its decision is affirmed as to specification 5, Charge I. The findings of the former specifications and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered on the specifications so set aside and the sentence.

Judge PERRY concurs.

---

17. *United States v. Adamiak, supra* at 419, 15 C.M.R. at 419.

18. *Id.; see also United States v. Allen*, 20 U.S. C.M.A. 317, 43 C.M.R. 157 (1971), and *United States v. Cole*, 17 U.S.C.M.A. 296, 38 C.M.R. 94 (1967).

19. As stated by one military law commentator on a closely related point:

> In a system of justice operating within a well-defined and fairly cohesive community, the mere threat of command influence may be as debilitating to the system as its actual presence. If respect for the justice system is a key factor in military morale and discipline, the fact that the system appears vulnerable to command pressures may be as damaging as the occasional exercise of such pressures. Individuals react to phenomena, after all, on the basis of their perceptions of those phenomena.

H. Moyer, *Justice and the Military*, § 3–400 (1972).

20. Our resolution of this issue makes it unnecessary to reach the second issue granted in this case.

COOK, Judge (concurring in part and dissenting in part):

I think trial judges need no reminder of their responsibilities in regard to declaration of a mistrial, but I see no harm in the reminder essayed in the principal opinion. I am, however, troubled by the statement that a judge "must engage in a sufficient inquiry as a matter of law to uncover sufficient facts to decide the issue before him." The party seeking a mistrial because of an event occurring outside the courtroom has the obligation to present the facts to the judge. If the statement changes that rule and burdens a judge with the duty to develop the extrajudicial facts on his own initiative, I disagree with it. A trial judge may, and should, seek clarification or necessary elaboration of evidence pertinent to a ruling he is required to make,[1] but that authority to inquire is different from the duty to investigate that seems to be suggested by the statement that troubles me.

Other parts of the principal opinion dealing with the mistrial issue give me pause. Suffice it, however, that I am satisfied Captain Leibart's conversation with Sergeant Major Webb raises so strong a risk that it may have influenced Webb[2] that I concur in the conclusion that the judge should have granted the motion for a mistrial. However, I would not set aside all the findings of guilty.

The accused pleaded guilty to Specification 5, Charge I. The plea of guilty eliminated any possibility of harm as to the findings of that offense.[3] The trial, by a special court-martial, was concluded more than two years ago and the adjudged period of confinement has long since expired. See Article 57(b), Uniform Code of Military Justice, 10 U.S.C. § 857(b). Further, the record indicates the accused was restored to duty almost two years ago. I would, therefore, dismiss all findings of guilty except those of Specification 5, Charge I, and return the record of trial to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence on the basis of those findings of guilty.[4]

---

1. *See* paragraph 39*b*(4), Manual for Courts-Martial, United States, 1969 (Revised edition).

2. *See United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954).

3. *See United States v. McBride*, 6 U.S.C.M.A. 430, 20 C.M.R. 146 (1955).

4. *See United States v. Wallace*, 5 M.J. 69 (C.M.A.1978).