UNITED STATES, Appellee,

v.

Private E–1 Bernard J. STOKES, 282–68–0068, United States Army, Appellant.

SPCM 20647.

U.S. Army Court of Military Review.

13 Dec. 1984.

Lieutenant Colonel Paul J. Luedtke, JAGC, Lieutenant Colonel William P. Heaston, JAGC, Major Lawrence F. Klar, JAGC, Captain Rita R. Carroll, JAGC, and Captain Wendell A. Hollis, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Samuel J. Rob, JAGC, were on the pleadings for appellee.

Before MARDEN, PAULEY, and WERNER, Appellate Military Judges.

OPINION OF THE COURT

WERNER, Judge:

In accordance with his pleas, appellant was convicted of wrongfully possessing heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982). A military judge sentenced him to a bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $250.00 pay per month for four months. Pursuant to a pretrial agreement, the convening authority approved the discharge and only three months of the confinement and forfeitures.

Appellant was a member of a unit assigned to the 3d Armored Division. He committed the offense of which he was convicted in September 1983 while Major General Thurman E. Anderson was the division commander and nominal convening authority. General Anderson did not refer the charges to trial. Instead, on 13 February 1984, he forwarded them to his immediate superior, Lieutenant General Paul S. Williams, Jr., by the following indorsement:

> In light of recent judicial decisions by trial court judges concerning my role as 3d Armored Division General Court-Martial Convening Authority, I request that Commander, V Corps, serve as Convening Authority in this case and take action as deemed appropriate. I am forwarding the attached case without my recommendation as to disposition.

On 21 February 1984, General Williams referred the charges to a special court-martial which was tried on 14 March 1984.

Before entering pleas, appellant moved for dismissal of charges or other appropriate relief on the grounds of unlawful command influence by General Anderson. Conceding that General Anderson was no longer in command of the 3d Armored Division, the trial defense counsel nevertheless contended that the General's unlawful influence had the vestigial effect of impairing appellant's ability to obtain favorable character evidence during presentencing. He requested that the court take judicial

notice of the record of trial in *United States v. Giarratano*.[1] After judicially noting that record and that the General was no longer in command of the Division, the military judge advised counsel for the parties:

If you feel that there is any evidence that any member of the accused's chain of command or anyone else might have come in and testified favorably for the accused, or might reasonably have been expected to come in and testify favorably for the accused, and I'll hear that evidence and take any remedial steps that are necessary, but other than that, merely from the fact that during the tenure of the previous commander, there was command influence in the 3d Armored Division. I don't think it raises an issue, at this point, with regard to this particular case.[2]

Subsequently, the parties stipulated to the expected testimony of eight witnesses (four officers and four noncommissioned officers) representing each level of the appellant's command chain. The military judge found that while one of the witnesses, the appellant's battalion commander, "was exposed to remarks by General Anderson which might have amounted to command influence, ... the government has shown by clear and convincing evidence that he is not adversely affected by anything that was said by General Anderson...." The remaining witnesses either had not heard the General's remarks, could not recall them or were otherwise untainted. All stated they would testify for appellant without fear of reprisal if they had information of benefit to him. The military judge ruled that appellant's case was unaffected by unlawful command influence and denied appellant's motion. Appellant now contends that the judge erred in so ruling. We disagree.

In *United States v. Treakle*, 18 M.J. 646 (A.C.M.R.1984) (en banc), we held that where unlawful pressure is brought to bear on actual or prospective witnesses with respect to the content of their testimony, there is a rebuttable presumption that the recipients of this pressure were in fact influenced in violation of Article 37, Uniform Code of Military Justice, 10 U.S.C. § 837 (1982). Although the presumption may be rebutted by clear and positive evidence that no actual influence occurred, ordinarily something more than the witness' denial that he would be influenced is required to establish an adequate rebuttal. The rationale underlying this principle was expressed in *United States v. Rosser*, 6 M.J. 267 (C.M.A.1979):

Military law has traditionally viewed such perfunctory statements from subordinates on the effects of command influence as inherently suspect, not because of the credibility of the witness but because of the difficulty of the subordinates in ascertaining for himself the effect of any attempted command influence. The military judge's stated reliance on these perfunctory statements and his failure to more carefully examine the effect of command influence in this case was error.

*Id.* at 272.

In *United States v. Southers*, 18 M.J. 795 (A.C.M.R.1984), this Court examined a factual situation similar to that presented by the case before us. In keeping with the mandate of *Rosser, supra*, the trial judge received stipulations of expected testimony from members of the accused's chain of command which showed that those witnesses were not influenced to withhold testimony and were not reluctant to testify on appellant's behalf. On the strength of this evidence, we held that the Government successfully rebutted the presumption that General Anderson had influenced appellant's chain of command to withhold favor-

1. *See United States v. Treakle*, 18 M.J. 646, 650 n. 3 (A.C.M.R.1984) (en banc).

2. We do not construe the judge's remarks to mean that the accused was required to specifi- cally show that prospective witnesses were influenced in order to raise the issue for our review.

able evidence.[3] "The military judge's actions not only cured any specific prejudice, ... but also dispelled the appearance of unlawful command influence...." *United States v. Southers, supra* at 797.

Applying the foregoing analysis to the instant case, our first task is to determine whether the issue of unlawful command influence by General Anderson is adequately raised since this case was referred to trial by a different convening authority and was tried after the General's tenure as commander of the 3d Armored Division had ceased. We conclude that it was. Unlike situations involving other forms of improper command control, unlawful command influence over witnesses is not dispelled by simply excising the commander from the judicial process. This is particularly true where, as here, that commander is a general officer. The realities of military life are such that officers of General Anderson's rank and position are capable or are perceived to be capable of affecting the military careers of former subordinates as well as those currently under their command. The record of trial in *United States v. Giarratano* demonstrates that the General widely and vociferously disseminated his message to officers and senior noncommissioned officers in the command chain in the context of leadership instruction. Letters from the Division Command Sergeant Major and a Brigade Command Sergeant Major further spread the General's word to lower echelon noncommissioned officers. Unfortunately, the reach of the General's command guidance extended to the criminal justice system by affecting prospective witnesses. Although the General attempted to undo the damage through command letters and other means, he was not entirely successful. As late as December 1983, some members of his command continued to believe that they were

not supposed to testify for accused persons. We believe that the General's guidance was perceived as not only promoting his views on leadership within the division but for the entire Army as well. Such perception would not be dispelled simply because the General was no longer in command. Nevertheless we find, as did the military judge, that the Government rebutted the presumption that appellant was denied favorable character evidence as a result of General Anderson's actions.

The fact that all members of appellant's chain of command testified through stipulations of expected testimony is impressive evidence that they were not influenced. Unlike the perfunctory disclaimers condemned in *Rosser,* these stipulations were introduced in court after appellant's counsel had the opportunity to challenge them, but expressly elected not to do so. Under the circumstances, they resemble testimony subject to defense cross-examination and as such, are more reliable than those not so confronted. While there may have been some undiscovered witnesses in the 3d Armored Division or elsewhere who felt constrained not to testify, we are convinced that any evidence they might have given would have had only minimal impact on the disposition of this case.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge PAULEY concurs.

Senior Judge MARDEN did not participate in the decision of this case.

---

**3.** The military judge, out of an abundance of caution, prohibited the Government from presenting any evidence concerning the appellant's potential for further military service. The Court held that while this remedy was effective to prevent the Government from introducing unfavorable testimony against the accused, it did not protect against the chilling effect of General Anderson's actions on prospective witnesses who would have given testimony that would have been to his benefit. Because of the successful rebuttal of the presumption of prejudice, the Court considered the matter irrelevant.