**UNITED STATES**

v.

**Gary M. BLACK, 367 72 7436 Captain (O–3), U.S. Marine Corps.**

**NMCM 90 03704.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 5 July 1990.

Decided 12 May 1994.

Maj R.T. McNeil, USMC, Appellate Defense Counsel.

LT Dwight D. Mersereau, JAGC, USNR, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

PER CURIAM:

The appellant was tried by general court-martial before military judge alone. Contrary to his pleas, he was convicted of conspiracy to obstruct justice, wrongfully endeavoring to unlawfully influence the testimony of two Marine Corps recruits, both of whom were witnesses in an anticipated investigation, and wrongfully endeavoring to impede an investigation, in violation of Articles 81 and 134, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 934. The appellant was sentenced to a dismissal from the service. The convening authority approved the sentence as adjudged.

The charges stem from the appellant's involvement in the investigation and reporting of an incident in which Private [hereinafter Pvt] Laboy–Velez lost consciousness during improperly-conducted incentive physical training [hereinafter IPT] of platoon 2019 by the Assistant Drill Instructor Sergeant [hereinafter Sgt] Beaty. The appellant, Pvt Laboy–Velez's company commander, ob-

tained permission from the battalion commander to conduct an informal investigation into the matter. The evidence presented at trial revealed an elaborate scheme in which the appellant, the Series Gunnery Sergeant, the Platoon Drill Instructor, and the Assistant Platoon Drill Instructor induced the platoon members to make false statements regarding the Pvt Laboy–Velez incident. The evidence also indicated that the appellant prepared a written narrative of the false version of the events prior to his questioning of the platoon members and that this narrative was used by the Platoon Drill Instructor to prepare a false Serious Incident Report [hereinafter SIR].

In his first assignment of error,[1] the appellant contends that the Battalion Commander, Lieutenant Colonel [hereinafter LtCol] Judge, and the trial counsel, LtCol Koenig, exercised unlawful command influence intimidating witnesses and thereby impeding the appellant's right to present favorable testimony at trial. The appellant also alleges prosecutorial misconduct by LtCol Koenig for using Major Hickson, an officer charged with investigating the incident, to request evidence directly from the appellant despite the fact that the appellant was at the time represented by counsel.

LtCol Judge was the Commanding Officer of 2d Recruit Training Battalion, the appellant's command, as well as that of most of the witnesses who testified at trial. He was also the officer who convened the Article 32, UCMJ, 10 U.S.C. § 832 investigation. The defense presented evidence at the Article 39a, UCMJ, 10 U.S.C. § 839a, hearing that the testimony of witnesses may have changed or been affected by discussions these witnesses had with LtCol Judge and/or the prosecutor LtCol Koenig. For example, Sgt Lepley was summoned to see LtCol Judge after testifying on behalf of the appellant at the Article 32, UCMJ, investigation. Sgt Lepley was then advised of the following: that LtCol Koenig believed (1) that Sgt Lepley had lied during his testimony at the Article 32 investigation, (2) he had lied about

---

1. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE CHARGES AND SPECIFICATIONS ON THE

BASIS OF UNLAWFUL COMMAND INFLUENCE/PROSECUTORIAL MISCONDUCT.

an earlier unrelated SIR, (3) that he was placing loyalty in front of integrity, (4) that he was possibly throwing away 8 years of good service, and (5) that he had a duty to tell the truth. Sgt Lepley was later transferred from Gulf Company to Fox Company which was also under the command of LtCol Judge. Sgt Lepley believed he was being punished for his testimony at the Article 32, UCMJ, investigation. Other drill instructors with the battalion became aware of the counseling session.

Another witness, Sgt Britt, was interviewed by LtCol Judge who discussed with him his possible violation of Article 107, UCMJ, by submitting a false SIR unrelated to the appellant's charges. Although Sgt Britt originally denied the allegation, he later admitted to LtCol Judge that he had falsified the SIR. LtCol Judge informed Sgt Britt that his cooperation with the government in the appellant's case would weigh in his, LtCol Judge's, decision on how this allegation of the false SIR would be handled. Sgt Britt was also counseled on the need to tell the truth. Sgt Britt was eventually relieved as a senior drill instructor and received a non-punitive letter of caution for falsifying the SIR.

Sgt Beaty, another witness, was convicted at a summary court-martial, despite his pleas, of improperly conducting IPT of platoon 2019. Thereafter, LtCol Koenig discovered additional violations of the Code by Sgt Beaty and informed LtCol Judge that if these charges were preferred, "it would help us get his [Sgt Beaty's] cooperation." The additional charges were preferred, and Sgt Beaty was questioned by LtCol Judge about the charges without the benefit of Article 31, UCMJ, 10 U.S.C. 831, warnings. LtCol Judge informed Sgt Beaty that he had not decided how to proceed on the charges. Thereafter, Sgt Beaty was interviewed by LtCol Koenig, who informed Sgt Beaty that he would recommend that no further action be taken on the pending charges. The first day of the court-martial of the appellant, LtCol Judge withdrew the charges against Sgt Beaty.

On two occasions, the trial counsel, LtCol Koenig, asked the Article 32, UCMJ, investigating officer to contact the appellant directly in order to ascertain if the accused would voluntarily provide statements which the appellant had secured from the members of platoon 2019. At the time of the first contact, a trial defense counsel had not formally been detailed as the appellant's counsel; however, a Major Sparks was advising the appellant as defense counsel and the trial counsel was aware of the relationship. The second contact with the appellant occurred on 26 February 1990, the day that Major Sparks was formally detailed as the appellant's counsel for the Article 32 investigation. The appellant did not provide Major Hickson with any information on either occasion.

The military judge made extensive findings of fact and conclusions of law including the following:

> (28) Lieutenant Colonel Judge did not attempt to instruct or improperly influence any witness in the accused's case to lie or change his testimony in order to convict the accused of the current offenses nor did he attempt to preclude anyone from truthfully testifying favorably for the accused or presenting evidence on Captain Black's behalf.

> . . . .

> (30) There is no evidence that any pressure, other than to tell the complete truth, was exerted on any witness prior to testifying in any proceeding involved in this case.

> (31) There is no evidence that any potential witness failed to testify at this trial as a result of concern for the possible consequences of that testimony.

> (32) While the court is mindful of the testimony of Sergeant Lepley, I specifically find there is not present at MCRD Parris Island, a chilling effect on potential witnesses which would preclude the accused from receiving a fair trial or which requires that this case be transferred to another convening authority.

> . . . .

> 4. Based upon the foregoing and the totality of the evidence, I find:

(1) The defense has reasonably raised the issue of whether the conduct of subordinates of the convening authority, including Lieutenant Colonel Judge and Lieutenant Colonel Koenig, the trial counsel, has amounted to unlawful command influence in the processing of the case.

(2) There is clear and positive evidence that unlawful command influence did not exist with regard to the procedures employed by subordinates to the convening authority, and specifically Lieutenant Colonels Judge and Koenig, in the processing of this case.

(3) Lieutenant Colonel Judge did not violate Article 98, UCMJ, with regard to the accused's trial in his counseling of Sergeant Lepley. There is no evidence that Lieutenant Colonel Judge improperly attempted to influence Sergeant Lepley's testimony when he counseled Sergeant Lepley on 20 March 1990. It is clear from the evidence that Lieutenant Colonel Judge's actions in talking to Sergeant Lepley were in no way intended or designed to inhibit Sergeant Lepley or any other person from submitting matters favorable to the accused at his trial. Although Sergeant Lepley may have perceived he was being punished based upon the counseling and his reassignment, this in no way inhibited him from testifying or influenced the substance of his testimony.

. . . .

(5) Through his actions, the trial counsel, Lieutenant Colonel Koenig, did not become an investigator and his actions do not warrant his being precluded from serving as trial counsel in this case.

(a) While the better course of action,[2] rather than going through Major Hickson, with regard to seeking the statements of the recruits in platoon 2019 which were believed to have been in the accused's possession and the information subsequently sought through Major Hickson's conversations with the accused, would have been to go directly to defense counsel, Major Sparks, or have utilized appropriate investigators such as those from CID, there was no prejudice incurred by the accused as no information was received from the accused as a result of any of the contacts.

(b) Lieutenant Colonel Koenig's involvement in the discovery of new charges relating to Sergeants Britt and Beaty were [sic] discovered during the course of his duties as trial counsel in conducting proper investigation while preparing for trial. The subsequent use of these charges by the trial counsel and Lieutenant Colonel Judge to seek to have Sergeants Britt and Beaty testify truthfully at the accused's trial did not constitute unlawful command influence.

. . . . .

(7) Viewing individually the actions of the subordinates to the convening authority and the totality of these actions and all circumstance, there is clear and positive evidence and, in fact, evidence beyond reasonable doubt, that the individual actions of the persons involved and the combination of actions by all persons involved do not constitute unlawful command influence in the processing of the accused's case, that witnesses have not been improperly influenced or potential witnesses inhibited or "chilled" with regard to testifying, and that the accused has not been denied any substantial right or denied due process.

Military judge's attached, Essential Findings, And Memorandum Of Decision Regarding Defense Motion To Dismiss Charges For Unlawful Command Influence, [MJEF], PP 7–9.

 The law that guides our inquiry is quite clear, as this Court has stated:

Unlawful command influence can be either actual or apparent, ... and in either form it is the mortal enemy of military justice.... When exercised, unlawful command influence "tends to deprive servicemembers of their constitutional rights" and

---

**2.** Although we agree that there were "better course[s] of action" for trial counsel to have taken, we unhesitatingly believe that the misuse of Major Hickson as an intermediary to approach the accused, then known to be represented by counsel, was clearly an ethical violation and indicative of the overreaching that took part in preparing for trial. We agree that appellant was not prejudiced by that specific conduct as no materials were surrendered.

more specifically, if "directed against prospective defense witnesses, it transgresses the accused's right to have access to favorable evidence" guaranteed by the Sixth Amendment. . . .

. . . [W]hen the defense, at trial, raises an issue of command influence through the presentation of some evidence sufficient to render reasonable a conclusion in favor of the allegation asserted, the burden shifts to the Government to prove, by clear and positive evidence, that command influence did not occur. If the Government is unable to do so, the military judge must find that command influence exists and must then take whatever measures are necessary and appropriate to ensure that the findings and sentence, if any, are so far unaffected by any command influence that a reviewing court would find them to be so beyond a reasonable doubt. If and only if the trial judge finds that command influence exists (because the defense successfully raised it, and the Government failed to disprove it by clear and positive evidence) and finds, further, that there is no way to prevent it from adversely affecting the findings or sentence beyond a reasonable doubt should the case be dismissed.

In a case in which the trial court erroneously finds that command influence does not exist or proceeds notwithstanding a finding that command influence exists or has existed, an appellate court may still affirm the findings and sentence if and only if the appellate court is satisfied that the findings and sentence are unaffected by command influence beyond a reasonable doubt. . . . If the trial court finds the defense has failed to raise an issue of command influence or that the Government has disproved the existence of command influence by clear and positive evidence, and the appellate court agrees, the issue of command influence is out of the case. If, however, the trial court erroneously concludes that the defense failed to raise the issue or fails to require the government to disprove the existence of command influence by clear and positive evidence, an appellate court may not affirm the findings nor the sentence unless, taking the evidence most unfavorably against the Government, it is convinced beyond a reasonable doubt that both the findings and the sentence are unaffected by any command influence; otherwise, the appellate court must direct further proceedings to resolve the matter in accordance with the above principles. . . .

*United States v. Hall,* 36 M.J. 1043, 1047–48 (N.M.C.M.R.1993) (footnote and citations omitted) (quoting *United States v. Jones,* 30 M.J. 849, 853–54 (N.M.C.M.R.1990)). *Accord United States v. Jameson,* 33 M.J. 669 (N.M.C.M.R.1991).

The prohibition against unlawful command influence in Article 37, Uniform Code of Military Justice (UCMJ), 10 U.S.C. 837, applies to command personnel other than the convening authority, *United States v. Levite,* 25 M.J. 334 (C.M.A.1987), and attempts to influence the testimony of or tampering with defense witnesses are prohibited, *id.; United States v. Rosser,* 6 M.J. 267 (C.M.A.1979), including character witnesses, *see United States v. Treakle,* 18 M.J. 646 (A.C.M.R.1984);

*Hall* at 1048.

██ We agree with the military judge's finding that the defense reasonably raised the issue whether the conduct of the subordinates of the convening authority, including Lieutenant Colonel Judge and Lieutenant Colonel Koenig, amounted to unlawful command influence in the processing of this case. MJEF 4(1). We cannot agree, however, with his following conclusion that there is clear and positive evidence that unlawful command influence did not exist with regard to the procedures employed. MJEF 4(2).

We believe that the type of alliance forged here between the trial counsel and the commanding officer of the appellant and the material witnesses in this case, in which evidence newly discovered by trial counsel would be used by the commanding officer to extract a change of testimony or cooperation in return for favorable action on the part of the commander, and within the domain of that commander, ignores "the 'delicate balance' that must be maintained between military justice and command discipline." *United States v. Rosser,* 6 M.J. 267, 272 (C.M.A. 1979). The constant adjuration that the wit-

ness was only being prompted to "tell the truth" becomes suspect under such circumstances.

That trial counsel and the commanding officer may have had the most honorable of motives in getting to the bottom of this charged cover-up into the inappropriate treatment of recruits is not the deciding factor. The issue is not the ends but the means and the effects of the chosen means on the proceedings of this case.

While there is no direct evidence [3] that the unlawful command influence affected the trial of appellant's case, neither is there reliable evidence that it did not. On the whole record, we are left with a reasonable doubt as to whether or not the proceedings were affected by unlawful command influence. Because of the rules relating to the allocation of the burden of proof and the risk of non-persuasion, this is enough to require corrective action. *United States v. Jameson*, 33 M.J. 669, 677 (N.M.C.M.R.1991). Accordingly, we set aside the findings and sentence. A rehearing may be ordered by a different convening authority.

JONES, Senior Judge, concurred prior to reassignment.

REED, Senior Judge, and LAWRENCE, Judge, concur.

---

**3.** But there was some difference in the testimony of Sergeant Britt from that at the Article 32, UCMJ, Investigation, to his testimony at trial. Further, after testifying at the Article 32 Investigation Sgt Lepley did not testify at trial on the merits.