# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant CHRISTOPHER B. STARKS
### United States Air Force

## ACM S32221

## 16 July 2015

Sentence adjudged 2 October 2013 by SPCM convened at Holloman Air Force Base, New Mexico. Military Judge: Michael J. Coco.

Approved Sentence: Bad-conduct discharge, confinement for 3 months and 28 days, and reduction to E-3.

Appellate Counsel for the Appellant: Captain Travis L. Vaughn.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

HECKER, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A special court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of wrongfully using and possessing methamphetamine, and possessing drug paraphernalia, in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934. The adjudged sentence consisted of a bad-conduct discharge, confinement for 4 months, and reduction to E-3. The convening authority reduced the confinement to 3 months and 28 days but otherwise approved the adjudged sentence.

The appellant argues that (1) the military judge erred in admitting portions of a drug testing report and expert testimony related thereto, and (2) the evidence is factually and legally insufficient to sustain his convictions.[1] We disagree and affirm.

*Background*

On 8 January 2013, the appellant, a member of the Security Forces squadron, was not scheduled to work and invited several friends to have a video game day at his house. He and two female civilians went to a mobile home to pick up a third friend, who was also going to participate in the game day. They waited approximately an hour before eventually leaving the third friend and going back to the appellant's house. Others joined them later in the day, and they played video games and engaged in other activities past midnight.

The following day, the appellant went to work and left, at minimum, the two female civilians at his residence. When the women awoke, they cleaned the appellant's house, did his laundry and, according to their testimony, closed but did not lock his front door when they left.

Later that afternoon, a neighbor called the local police and reported the appellant's front door was open. Police responded and, while securing the residence, found plastic baggies containing a white substance, a glass pipe wrapped in a washcloth, and other materials the officers believed were drug paraphernalia. Scientific testing determined the baggies contained methamphetamine residue, and the appellant's DNA was found on the glass pipe.

Police called the appellant to tell him his residence was unsecured. He responded and was arrested when he arrived. As part of the ensuing investigation, Air Force investigators obtained a search authorization and obtained a sample of the appellant's urine which later tested positive for methamphetamine.

Additional facts necessary to resolve the assigned errors are included below.

*Admission of Drug Testing Report*

Prosecution Exhibit 1 was an excerpt from the report of the analysis of the appellant's urine. It was initially offered by the prosecution in an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session without objection from the defense. In a subsequent Article 39(a), UCMJ, session and before the members had seen the exhibit, trial defense counsel noted that he should have objected and asked the military judge to reconsider the

_____

[1] The appellant raised this assignment of error, as it applies to Charge I, Specification 2, and the Specification of Charge II, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

document's admissibility on hearsay, chain of custody, and confrontation clause grounds. The military judge agreed to reconsider and, after hearing the defense's objection, declined to admit Prosecution Exhibit 1 without additional foundation. The government then called additional foundational witnesses, and the military judge admitted the document.

The government's attempt to establish the foundation for Prosecution Exhibit 1 covered several Article 39(a), UCMJ, sessions and was muddled at best. Although the military judge did not explicitly cite Mil. R. Evid. 104(b),[2] the context of the discussion suggests he believed sufficient facts would be introduced during trial to connect the necessary foundational dots.

Prosecution Exhibit 1 was eventually shown to the court members, who also heard testimony of an expert forensic toxicologist about the testing process and the positive methamphetamine result. However, there was a missing critical foundational element: there was no witness or evidence that directly tied the tested urine sample to the appellant. The Air Force investigators who seized the sample did not follow the collection, marking, or reporting procedures outlined in Air Force Instruction 44-120, *Military Drug Demand Reduction Program* (3 January 2011, Incorporating Change 1, 6 June 2012), nor did they take sufficient other steps to create an evidentiary link between the seized sample, the sample that formed the basis of the drug testing report, and the expert's opinion.

The military judge identified the deficiency at the conclusion of the evidence and took two remedial measures. First, he declined to include what would otherwise have been a standard panel instruction about the inferences that could be drawn from the presence of a drug in one's urine. Second, he instructed the members they were not to consider the expert's testimony or any reference to a positive urinalysis for any reason with respect to any of the charges and specifications. The military judge specifically asked the members if they could follow that instruction. Each replied that he or she could. In his discussions with counsel, the military judge noted that his remedial measures had "effectively granted the motion to suppress" that evidence.

We review a military judge's evidentiary rulings for an abuse of discretion. *See United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001). Under that analysis,

---

[2] Mil. R. Evid. 104(b):

> *Relevancy that Depends on a Fact.* When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The military judge may admit the proposed evidence on the condition that the proof be introduced later. A ruling on the sufficiency of evidence to support a finding of fulfillment of a condition of fact is the sole responsibility of the military judge, except where those rules or this Manual provide expressly to the contrary.

findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *United States v. Gallagher*, 66 M.J. 250, 253 (C.A.A.F. 2008). The abuse of discretion standard is strict, calling for the challenged action to be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)) (internal quotation marks omitted). "[T]he abuse of discretion standard recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

The appellant's brief extensively discusses the evidentiary infirmities of Prosecution Exhibit 1 and the related expert testimony. It also notes the military judge's ultimate exclusion of the contested evidence and his instruction to the members that they were to disregard it. However, without elaboration, the appellant asserts the only "reasonable conclusion" is that the members ignored the military judge's instruction to disregard the evidence.

Assuming without deciding that the military judge abused his discretion in initially admitting the evidence, the military judge permissibly—and appropriately—reconsidered and reversed his admissibility ruling.[3] A military judge has inherent authority to reconsider any ruling made and to receive additional evidence thereon if appropriate. *See* Rule for Courts-Martial (R.C.M) 905(f) ("On request of any party or *sua sponte*, the military judge may . . . reconsider any ruling, other than one amounting to a finding of not guilty."); *Harrison v. United States*, 20 M.J. 55 (C.M.A. 1985).

We next turn to the question of whether the members impermissibly considered the excluded evidence in reaching their verdict. Court members are "presumed to follow instructions, until demonstrated otherwise." *United States v. Washington*, 57 M.J. 394, 403 (C.A.A.F. 2002) (citing *United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991)). We will address the appellant's legal and factual sufficiency arguments below; however, he points to nothing specific in the record to suggest that the members failed to follow the military judge's instructions to disregard the evidence.

---

[3] The military judge's instruction to the members to disregard completely any reference to the urinalysis result may have given the appellant an undeserved windfall. The test result's exclusion was based on a failure in the chain of custody linking the specimen to the appellant. At the time military investigators interviewed the appellant and confronted him with the positive urinalysis result, they reasonably believed he had tested positive and based their questions on that belief. He made admissions that, pursuant to the military judge's instructions, the members were to disregard. Even had investigators not yet received the urinalysis results, they could still permissibly have told him his test was positive, in an effort to gauge his reaction. *See United States v. Thrower*, 36 M.J. 613, 614 (A.F.C.M.R. 1992) ("The use of deception in obtaining a confession is not impermissible as long as the artifice was not designed or calculated likely to produce an untrue confession.").

The appellant's argument appears to be that, despite the military judge's ultimate exclusion of the evidence and despite his instructions to the members, the very fact that they heard the evidence was so prejudicial that an instruction was insufficient to cure the potential prejudice. However, the experienced civilian defense counsel at trial apparently disagreed, as he did not request a mistrial.[4]

Rule for Courts-Martial 915(a) provides that a mistrial may be declared when it is "manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." The rule's discussion offers the example of granting a mistrial "when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members." R.C.M. 915(a), Discussion. "[A] mistrial is an unusual and disfavored remedy. It should be applied only as a last resort to protect the guarantee for a fair trial." *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003). The decision to declare a mistrial sua sponte is within the sound discretion of the military judge. As our superior court noted:

> [An appellate court] will not reverse such a determination unless the military judge has abused his discretion under the particular facts and circumstances of the case before him. An abuse of discretion cannot be readily defined in general terms so as to establish hard and fast rules applicable to all individual courts-martial; to do so would curtail the broad powers of the trial judge to act in response to the particular facts and circumstances as perceived by him at the trial level.

*United States v. Rosser*, 6 M.J. 267, 270–71 (C.M.A. 1979) (footnote omitted). In the absence of a defense request, and based on the facts of this case, we cannot say that the military judge abused his broad powers to act in response to the facts as he perceived them.

*Legal and Factual Sufficiency*

The appellant challenges the legal and factual sufficiency of the evidence of each specification. With respect to the specification alleging use of methamphetamine, he asserts the only evidence supporting that specification was the excluded urinalysis result. With respect to the convictions for possession of methamphetamine and drug paraphernalia, he argues, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.

---

[4] Trial defense counsel did make a motion for a finding of not guilty pursuant to Rule for Courts-Martial 917. The military judge, after noting that he was obligated to review the evidence in the light most favorable to the prosecution, identified other evidence which, if believed, could support a guilty finding. We discuss that evidence more fully when we consider the sufficiency of the evidence.

1982), that the drugs and paraphernalia were introduced into his residence by a third party without his knowledge.

We review issues of legal and factual sufficiency de novo. *See Washington*, 57 M.J. at 399. "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

A reasonable factfinder could have found the appellant guilty of using methamphetamine even without consideration of the urinalysis result and related expert testimony. In the appellant's bedroom, investigators found next to his bed a glass smoking pipe of the type commonly used to smoke methamphetamine. The pipe contained methamphetamine residue and burn markings. It also contained the appellant's DNA. The appellant told investigators he knew it was a pipe used for smoking methamphetamine. He testified he was in his bedroom on the evening of 8 January 2013 but did not see the pipe next to his bed. The appellant's testimony at trial contained other issues and inconsistencies which the members could reasonably have found negatively impacted his credibility. For example, the appellant testified that when he was waiting at the mobile home, he noted that there was "a lot of smoke" and that "it smelled a little weird," but he did not tell investigators that when they interviewed him. He also testified that on 9 January 2013 when he went to work, he took a pack of cigarettes from his coffee table and smoked the entire pack that day which left him feeling "weird." He noted that the cigarettes had "kind of like a liquid, or it seemed like they got wet after lighting them." After considering all the admissible evidence in the case, we are convinced beyond a reasonable doubt that the appellant knowingly used methamphetamine.

The evidence is also legally and factually sufficient to support the appellant's convictions for possession of methamphetamine and drug paraphernalia. Local police found jewelers' bags on a Styrofoam plate in the appellant's kitchen. There was

methamphetamine in the bags. As noted above, a glass smoking pipe with methamphetamine residue was found in the appellant's bedroom next to his bed and contained his DNA. The appellant became the sole occupant of the apartment when his wife moved out in approximately June 2012. We have considered, but are unpersuaded, by the appellant's various explanations for the sudden appearance of the drugs and paraphernalia in his home without his knowledge, as well as how he believes his DNA might have gotten onto the smoking pipe. The members could reasonably have found him guilty of these offenses, and we are ourselves convinced of his guilt beyond a reasonable doubt.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court