284

**UNITED STATES, Appellee**

v.

**Kenric D. WALLACE, Specialist
U.S. Army, Appellant.**

No. 93–0295.
CMR No. 9102519.

U.S. Court of Military Appeals.

Argued Jan. 4, 1994.
Decided June 15, 1994.

For Appellant: *Captain Thomas D. Wight* (argued); *Colonel Malcolm H. Squires* and *Major Robin L. Hall* (on brief); *Lieutenant Colonel James H. Weise.*

For Appellee: *Captain Kenneth G. Wilson* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Jospeh A. Russelburg, Major Joseph C. Swetnam* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial in a contested case convicted appellant of two specifications of wrongful use of cocaine and acquitted him of three specifications of larceny, in violation of Articles 112a and 121, Uniform Code of Military Justice, 10 USC §§ 912a and 921, respectively. The approved sentence provides for a bad-conduct discharge, confinement for 90 days, and forfeiture of $250.00 pay per month for 6 months. The Court of Military Review affirmed the findings and sentence in an unpublished opinion. The granted issue asks whether appellant's court-martial was the result of unlawful command influence.

On August 16, 1991, appellant's company commander, Captain (CPT) Bynum, imposed nonjudicial punishment on appellant, under the provisions of Article 15, UCMJ, 10 USC § 815, for one specification of wrongfully using cocaine and one specification of larceny, in violation of Articles 112a and 121. On August 26, a superior commander, Lieutenant Colonel (LTC) Luckey, called CPT Bynum and suggested that he reconsider his decision to dispose of the case by nonjudicial punishment in light of the fact that appellant allegedly had committed additional offenses which were unknown to CPT Bynum at the time he imposed punishment.

LTC Luckey testified that he was contacted by a judge advocate, CPT Arnold (who eventually was detailed as trial counsel in this case), advising him "that we had moved too fast on a case, and he had not completed his investigation, and that there were addi-

tional charges that needed to be made a part of the total package." CPT Arnold suggested that LTC Luckey and CPT Bynum "take this under consideration."

After discussing the case further with CPT Arnold, and while CPT Arnold was still in his office, LTC Luckey called CPT Bynum on the telephone and "told him that we had been given some additional information ... [and] perhaps maybe we needed to reconsider what was going on." Asked what his "exact words" were, LTC Luckey testified, "As best as I remember, I asked him to take a look at the information that was going to be provided to him, and to think about whether or not it would be appropriate."

After the conversation with LTC Luckey and after considering the additional information, CPT Bynum set aside the nonjudicial punishment and preferred charges for two specifications of wrongful use of cocaine and three specifications of larceny. The charges included the two offenses previously disposed of by nonjudicial punishment. Both CPT Bynum and LTC Luckey recommended trial by a special court-martial empowered to impose a bad-conduct discharge. LTC Luckey's superior, the Medical Department Activity commander, recommended a general court-martial. The case was referred to a general court-martial by Major General Renner, the commander of the United States Army Training Center and Fort Jackson.

Before entry of pleas, the defense made motions to dismiss based on prior punishment and unlawful command influence. During the hearing on the motions, LTC Luckey was questioned as follows:

Q. ... Did you order Captain Bynum to do anything in regards to an Article 15 on Specialist Wallace?

A. I did not.

Q. Do you allow your commanders to exercise their own judgment on military justice?

A. Totally.

Q. Do you ever evaluate them on their [Officer Evaluation Reports] regarding their actions on military justice?

A. I don't do that.

Later, on further examination by trial counsel, LTC Luckey was asked, "Did you in any way tell Captain Bynum to prefer charges against the accused?" He responded, "No, I don't do that."

CPT Bynum testified as follows in response to questioning by trial counsel:

Q. You stated that Colonel Luckey called you and asked you to reconsider setting aside the Article 15?

A. Right. I think his exact words were, "You may want to reconsider the Article 15 and consider setting it aside based on additional charges."

Q. Is it true that it is your decision and it was your decision at that time whether in fact you would set aside or not set aside?

A. Yes. In fact he told me, make your decision and he would make his decision.

*       *       *

Q. You make up your own mind in terms of what you do in military justice?

A. Yes.

Q. It's your decision?

A. Colonel Luckey—When I first got here, he always said you make your decision and he would make his decision, and we may not always agree, but that's the way the ball game works. And I understand that's the rule of the game.

Defense counsel later asked CPT Bynum, "[D]id you feel influenced from Colonel Luckey to do just that, set aside the Article 15 and prefer charges; did you feel influenced.?" CPT Bynum responded, "Only to reconsider."

Finally, on questioning by trial counsel, CPT Bynum testified as follows:

Q. When you set aside the Article 15, it was your decision?

A. Right. Based on the best information that I had at that time, it was my decision to do that.

Q. Colonel Luckey only asked you to reconsider setting aside?

A. Yeah—Well, two things. He said—three things actually. He said ... reconsider the Article 15 you did on Wallace; the second thing was consider setting aside the Article 15; and the third thing was to

make your decision. Those were the three statements he made to me.

Q. Did you feel any pressure that you had to set it aside?

A. Not that I had to. I did think that if I didn't ... he would probably set it aside for me.... The overriding factor was that there was a bunch of additional charges out there, some of which I wasn't aware of, that I thought needed review at a higher level than a company grade Article 15. And that was the primary factor of me setting aside the Article 15 on the 27th of August.

Upon questioning by the military judge, CPT Bynum again asserted that the decision to set aside the nonjudicial punishment and prefer charges was his own. He explained:

I can tell you, sir, that I'm the only company commander in the MEDDAC [Medical Department Activity], so it's not like I got other competition. Colonel Luckey and I have the understanding that my decisions are mine and his are his, and we're not always going to agree. In this case, the information I received over the phone, I thought was sufficient to warrant—if all those charges—if all those pending charges were going to get charged, I felt that warranted consideration at a higher level than mine.

The military judge denied the motion to dismiss the charges and made findings of fact and conclusions of law as follows:

I find that although Captain Bynum felt influenced to reconsider his decision concerning the Article 15, that that influence to reconsider was exercised on independent judgment, was lawful command guidance and not unlawful command influence. I find that there is no evidence here to indicate that Captain Bynum was unlawfully influenced, rather, I find that Bynum, the subordinate commander here, reconsidered on the basis of his superior's recommendation, and made an independent decision to set aside and an independent decision to forward the charges on this charge sheet for court-martial disposition. I find further that Captain Bynum fully understood and believed that he had realis-

tic choices in this case, and he exercised his own independent judgment in exercising those choices....

■ Appellant argues that LTC Luckey exercised unlawful command influence by countermanding CPT Bynum's decision to dispose of the case by nonjudicial punishment. He argues that, although LTC Luckey phrased his request in terms of a suggestion, CPT Bynum felt that he had no real choice but to set aside the nonjudicial punishment and prefer charges. The Government argues that "LTC Luckey's request to reconsider the Article 15 did not limit CPT Bynum's options, nor did it interfere with CPT Bynum's decision-making process." Answer to Final Brief at 5–6.

■ This Court has long held that the appearance or existence of unlawful command influence creates a rebuttable presumption of prejudice. *United States v. Johnson*, 14 USCMA 548, 551, 34 CMR 328, 331 (1964). RCM 306(a), Manual for Courts-Martial, United States, 1984, prohibits a superior commander from "limit[ing] the discretion of a subordinate ... on cases over which authority has not been withheld" from the subordinate. Where the issue of unlawful command influence is litigated on the record, the military judge's findings of fact are reviewed under a clearly-erroneous standard, but the question of command influence flowing from those facts is a question of law that this Court reviews *de novo*. *See* S. Childress and M. Davis, 2 *Federal Standards of Review* §§ 2.01 and 2.14 (2d ed.1992).

We hold that there was no unlawful command influence in this case. LTC Luckey did not suggest that nonjudicial punishment was inappropriate for the two offenses upon which it was based; rather he suggested that the additional offenses, previously unknown to CPT Bynum, might warrant a reevaluation of the case. Both LTC Luckey and CPT Bynum described a working relationship in which each officer exercised independent judgment in the disposition of cases. The military judge, who was in the best position to observe and evaluate the credibility and sincerity of both LTC Luckey and CPT Bynum, found that CPT Bynum exercised his

own independent judgment when he preferred charges and recommended disposition by a special court-martial empowered to adjudge a bad-conduct discharge. As we recently observed in a similar case, "There is nothing in the record of this case to persuade us to the contrary." *United States v. Davis,* 37 MJ 152, 156 (CMA 1993).*

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, and WISS concur.

SULLIVAN, Chief Judge (dissenting):

I am deeply troubled by the conduct of trial counsel in this case. It is quite clear that prior to the challenged referral, he strongly disagreed with Captain Bynum's initial decision to handle appellant's case at an Article 15, Uniform Code of Military Justice, 10 USC § 815, proceeding. It is also quite clear that he was the moving force behind Lieutenant Colonel Luckey's decision to ask Captain Bynum to reconsider this decision. Such conduct deprived appellant of a favorable independent judgment by his commanding officer and in my mind violated Article 37, UCMJ, 10 USC § 837. *See United States v. Hagen,* 25 MJ 78, 87 (CMA 1987) (Sullivan, J., concurring), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988).

---

* In this case our decision was facilitated by a well-developed record, from which it is clear that LTC Luckey did not engage in unlawful command influence. In *United States v. Rosser,* 6 MJ 267 (CMA 1979), this Court advised military judges to be cautious in relying on "perfunctory statements from subordinates," *id.* at 272, or a "blanket assertion of a subordinate in rank that he was not influenced," *id.* at 273. Although *Rosser* differs significantly from this case in that no unlawful command influence occurred in this case, this Court's exhortation in *Rosser* to fully *develop the objective facts on the record is still* sound advice.