# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**M.D. MODZELEWSKI, F.D. MITCHELL, J.A. FISCHER**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**TARRELL D. JILES**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201200062**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 9 October 2012.
**Military Judge:** LtCol Charles C. Hale, USMC.
**Convening Authority:** Commander, Marine Corps Base, Quantico, VA.
**Staff Judge Advocate's Recommendation:** LtCol C.B. Shaw, USMC.
**For Appellant:** LT Jared A. Hernandez, JAGC, USN.
**For Appellee:** CDR Kevin Flynn, JAGC, USN; LT Philip Reutlinger, JAGC; Ian D. Maclean, JAGC, USN; Capt Matthew Harris, USMC.

**6 March 2014**

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

FISCHER, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, in accordance with his pleas, of four specifications of violating a lawful general order (sexual harassment) and five specifications of assault consummated by a battery, in violation of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928. The military judge

sentenced the appellant to confinement for 100 days, reduction to pay grade E-1, a punitive letter of reprimand, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and suspended all confinement for a period of 12 months pursuant to a pretrial agreement.

The appellant asserts that the military judge erred by failing to provide adequate remedies to remove the taint of apparent unlawful command influence (UCI) committed by the Commandant of the United States Marine Corp (hereinafter "Commandant"). Additionally, the appellant asserts that the Government wrongfully suppressed evidence that the Commandant may have committed UCI in an unrelated case. He argues that this action denied the appellant a fair trial, because the military judge was unable to consider that evidence when crafting appropriate remedies in his case and the defense was prejudiced in pretrial negotiations with the CA.[1]

After careful consideration of the record and the briefs of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

**Procedural Timeline**

On 13 January 2012, charges were preferred against the appellant for violations of Articles 92 and 120, UCMJ. These charges stemmed from allegations that the appellant sexually harassed and sexually assaulted multiple junior Marines between January 2008 and July 2011. An Article 32, UCMJ, investigation was conducted on 27 and 28 February 2012. Additional charges of sexual assault and assault consummated by a battery were preferred on 13 March 2012 and on that date all charges were referred to a general court-martial. On 23 April 2012, pursuant to a pretrial agreement, the charges and specifications were withdrawn from the general court-martial and referred to special court-martial. However, on 30 April 2012, the appellant withdrew from the agreement and all charges and specifications were subsequently withdrawn from the special court-martial and were again referred to a general court-martial. The appellant was then arraigned on 8 May 2012.[2]

---

[1] Both assigned errors were submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] Colonel Daniel J. Daugherty, USMC, was the military judge who presided at the general court-martial. The record of trial delivered to the court for

2

On 15 June 2012, the trial defense counsel filed a motion for appropriate relief maintaining that UCI flowing from statements the Commandant made in a series of lectures known as the "Heritage Briefs"[3] prevented his client from being able to receive a fair trial.[4]  The Commandant's Heritage Brief was directed towards all officers and staff noncommissioned officers (SNCO) in the Marine Corps.  The briefs focused in part on the Commandant's disappointment with the lack of accountability for Marines who commit misconduct.  In May 2012, the Commandant disseminated a follow-up letter (White Letter 2-12) requesting support from Marine Leadership in combating, *inter alia*, sexual assaults in the United States Marine Corps.  In July 2012, the Commandant issued White Letter 3-12 explaining that the Heritage Brief and White Letter 2-12 were not designed to influence any Marine's decision at courts-martial or boards of inquiry.

On 11 July 2012, the military judge initially ruled the defense presented some evidence of UCI and the burden shifted to the Government to disprove the UCI under the test set forth in *United States v. Biagase*, 50 M.J. 143, (C.A.A.F. 1999).  GCM Appellate Exhibit XX.  On 18 July 2012, the UCI motion was litigated at an Article 39(a) session.  The parties stipulated to the facts and did not call witnesses.  At the conclusion of the motion session, the military judge found that some of the comments made by the Commandant during the Heritage Brief appeared to violate RULE FOR COURTS-MARTIAL 104(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), which prohibits a convening authority or commander from censuring, reprimanding, or admonishing a court-martial or other military tribunal or any member, military judge, or counsel, with respect to the findings or sentence adjudged by the court-martial or tribunal.  In order to discern the Commandant's intent behind some statements he made during the Heritage Brief, the military judge ordered that interrogatories be prepared and served on the Commandant.

---

docketing consisted of seven volumes.  Five of the volumes reflect the proceedings of the general court-martial from the Article 32 investigation through the withdrawal of those charges on 28 September 2012.  References to documents or transcript from those five records will be preceded by the letters GCM (i.e., GCM Record at 52).

[3] The lectures took place between April and June 2012.  The Commandant gave his "Heritage Brief" at Quantico, Virginia on 1 June 2012.

[4] The relief requested by trial defense counsel was a dismissal of all charges.  GCM Appellate Exhibit XVII at 28, 31.

On 27 July 2012, the military judge issued a twenty-two page written ruling on the UCI motion.  GCM Appellate Exhibit XXXV.  In his ruling, the military judge found: (1) The defense had met their initial burden of raising the issue of UCI by "some evidence" and that the evidence bore a "logical connection" to the court-martial; (2) The Government had met the burden of proving beyond a reasonable doubt that the Commandant's comments during the Heritage Brief did not constitute actual UCI; (3) The Government failed to meet its burden of proving the Commandant's comments during the Heritage Brief did not constitute apparent UCI; (4) A disinterested observer, fully informed of all the facts and circumstances could reasonably conclude that the Commandant's influence is such that prospective court members may either consciously or subconsciously believe that eighty percent of Marines accused of a sexual offense are guilty and/or must be discharged from the Marine Corps; and, (5) The Government had proven beyond a reasonable doubt that, although apparent UCI existed, it had not affected the proceedings at that point because the CA was not improperly influenced by the Commandant's actions, the defense had full access to evidence, and all requested defense witnesses are available and willing to testify favorably on behalf of the appellant.  *Id.* at 19-21.

To address the apparent UCI, the military judge granted the defense three additional peremptory challenges.  *Id*. at 22.  Moreover, the military judge indicated he would conduct extensive *voir dire* of the panel and would permit the trial and defense counsel to conduct extensive individual *voir dire*.  *Id.*  Finally, the military judge stated he would exercise the liberal grant mandate and "take such other appropriate measures requested or unilaterally to avoid even the appearance of evil in th[e] case."  *Id.*  The military judge concluded his ruling by denying the defense motion to dismiss.  He indicated that, if the responses to interrogatories, the *voir dire* of the members or other matters presented additional evidence of UCI or potential prejudice, he would reconsider his ruling and take whatever action may be required.  *Id.*

On 31 August 2012, the military judge held another Article 39(a) session on UCI, at which he addressed a trial defense motion to reconsider his earlier ruling.  GCM AE XXXIX and XL.  On 12 September 2012, the military judge issued a twelve page written supplemental ruling denying the defense motion to reconsider.  In his supplemental ruling the military judge addressed the Commandant's interrogatory responses and affirmed his prior ruling that the apparent UCI did not impact the

4

proceedings up to that point and that the remedial measures he implemented negated any taint.

On 28 September 2012, pursuant to a pretrial agreement, all charges and specifications were again withdrawn from a general court-martial and referred to special court-martial. On 9 October 2012, consistent with the terms of the pretrial agreement, the appellant entered guilty pleas to four specifications for failing to obey a lawful general order (sexual harassment) and five specifications of assault consummated by a battery. The remaining charges and specifications were withdrawn and dismissed by the Government in accordance with the pretrial agreement.

## Discussion

## Unlawful Command Influence

This court reviews a military judge's ruling on unlawful command influence *de novo*. *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006); *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999); *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). We review the military judge's findings of fact in conjunction with the appellant's claim under a clearly erroneous standard. *Wallace*, 39 M.J. at 286. We review a military judge's remedy for unlawful command influence for an abuse of discretion. *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010).

"[O]nce unlawful command influence is raised at the trial level, as it was here, a presumption of prejudice is created." *Id.* (citing *Biagase*, 50 M.J. at 150). To affirm in such a situation, we must be convinced beyond a reasonable doubt that the unlawful command influence had no prejudicial impact on the court-martial. *Id.* "We focus upon the perception of fairness in the military justice system as viewed through the eyes of a reasonable member of the public. Thus, the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis,* 63 M.J. 405, 415 (C.A.A.F. 2006).

In this case, the military judge was vigilant and proactive in addressing UCI. He held two separate Article 39(a) sessions to fully litigate the issue. The military judge ordered interrogatories from the Commandant to address statements made

5

during the Heritage Briefs. To address apparent UCI, the military judge provided three additional peremptory challenges to the defense, stated his intention to conduct extensive *voir dire* of potential panel members and granted the trial defense counsel the opportunity to conduct extensive individual *voir dire* of the members to ensure a fair and impartial panel. Finally, he stated that he would publish White Letter 3-12 for the members to read. We conclude that the military judge's actions sufficiently ameliorated any taint or potential taint from apparent UCI. Moreover, the military judge made it clear he would remain engaged on UCI throughout the proceedings and would take all necessary steps to ensure the appellant received a fair trial.

The remedies put in place by the military judge to ensure a fair and impartial panel were rendered irrelevant when the appellant elected to plead guilty to a portion of the charges and entered into a pretrial agreement with the CA.[5] The appellant's claim on appeal that he was forced into this circumstance due to the inadequacy of the military judge's remedies is wholly unsupported by the record.

The military judge did not abuse his discretion in crafting remedies and we are convinced beyond a reasonable doubt that a reasonable member of the public would not harbor significant doubts as to the fairness of these proceedings. Under the factual circumstances here, we find beyond a reasonable doubt that this case was not tainted by UCI.

## Discovery

On 3 September 2013, this court issued an order granting the appellant's request to attach multiple sworn declarations and statements to the record. These statements from various Marine officers address military justice proceedings in unrelated cases against individuals involved in the desecration of enemy corpses in Afghanistan. In sum, the general officer designated as the Consolidated Disposition Authority (CDA) in those cases described a meeting he had with the Commandant concerning disposition of the cases. Following the meeting, the Commandant took action to replace the CDA as convening authority for the cases and specifically stated in the withdrawal memo:

---

[5] As part of the agreement, the appellant elected trial by military judge alone. The appellant stated this was a freely bargained for provision and no one forced him to give up his right to a members trial.

I believe some of my comments during our recent conversation could be perceived as possibly interfering with your independent and unfettered discretion to take action in those cases. To protect the institutional integrity of the military justice process, and to avoid any potential issues, I withdraw your CDA designation.

The appellant maintains the Commandant's above statement contradicts his answers to the court-ordered interrogatories in this case. In his supplemental brief, the appellant asserts that the Government wrongfully withheld from the defense the Commandant's memorandum quoted above thus denying the appellant a fair trial. As prejudice, he cites the unavailability of the memorandum to the military judge when crafting appropriate remedies and to the defense during pretrial negotiations with the CA.

Article 46, UCMJ, 10 USC § 846, provides all parties to a court-martial with "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." R.C.M. 701(e) further provides that "[n]o party may unreasonably impede the access of another party to a witness or evidence." R.C.M. 701(a)(6), which implements *Brady v. Maryland*, 373 U.S. 83 (1963), requires the Government to disclose known evidence that reasonably tends to negate or reduce the accused's degree of guilt or reduce the punishment that the accused may receive if found guilty. Evidence that could be used for impeachment is also subject to discovery. *United States v. Bagley*, 473 U.S. 667, 678 (1985). Each party is entitled to the production of evidence that is relevant and necessary. R.C.M. 703(f)(1). The Rules also set forth additional duties concerning disclosure of information requested by the defense, R.C.M. 701(a)(2) and (5), including the requirement to permit the defense to inspect any documents "which are within the possession, custody, or control of military authorities, and which are material to the preparation of the defense . . . ." R.C.M. 701(a)(2)(A).

In cases in which the defense does not submit a discovery request, or submits only a general discovery request, the appellant is entitled to relief if he demonstrates that the nondisclosure was wrongful and shows a "reasonable probability"[6] of a different result at trial if the evidence had been

---

[6] In this context, the Supreme Court has defined a "reasonable probability" as a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682.

disclosed. Assuming without deciding that the Government's nondisclosure was wrongful, we are convinced, for the reasons detailed below, that there was not a reasonable probability of a different result had the material been disclosed. *See United States v. Roberts*, 59 M.J. 323, 326-27 (C.A.A.F. 2004). The appellant made a voluntary tactical decision to plead guilty and enter into a pretrial agreement with the CA. In return the appellant was tried at a lesser forum, was found guilty of only a portion of the charges and specifications, had the remaining charges and specifications withdrawn and dismissed, and had all adjudged confinement suspended. We find the appellant's contention that disclosure of the Commandant's memorandum would have altered this outcome purely speculative. Simply put, there is no evidence that suggests that the Commandant's unrelated statements regarding a different case would have impacted this court-martial or the pretrial negotiations between the appellant and the CA. Therefore, we conclude that it is not reasonably probable that disclosure of the requested material would have led to a different result.

## Court-Martial Order

We note that the court-martial order contains a scrivener's error with regard to Charge I, Specification 1, which incorrectly states the appellant pled to, and was found guilty of, violating a lawful general order between on or about 11 April 2011, to on or about 31 July 2011. The appellant actually pled to, and was found guilty of, violating a lawful general order between on or about 1 April 2011, to on or about 31 July 2011. We find the error harmless, but in keeping with the principle that military members are entitled to records that correctly reflect the results of their court-martial proceedings, we will order corrective action in our decretal paragraph. *See United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998).

## Conclusion

The findings and the sentence as approved by the CA are affirmed. The supplemental court-martial order shall reflect an

offense commencement date of "1 April 2011" in Specification 1 of Charge I.

Chief Judge MODZELEWSKI and Senior Judge MITCHELL concur.

For the Court

8

R.H. TROIDL
Clerk of Court