# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**CHRISTOPHER JANUSKI**
**ENSIGN (O-1), U.S. NAVY**

**NMCCA 201300210**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 31 January 2013.
**Military Judge**: CDR Lewis Booker, JAGC, USN.
**Convening Authority**: Commander Navy Region Southeast, Jacksonville, FL.
**Staff Judge Advocate's Recommendation**: CDR M.C. Holifield, JAGC, USN.
**For Appellant**: F.J. Spinner, Esq.; LT David Dziengowski, JAGC, USN; LT Jennifer Myers, JAGC, USN.
**For Appellee**: LCDR Keith Lofland, JAGC, USN; LT Ian MacLean, JAGC, USN.

**30 June 2014**

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A panel of officer members sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of rape by force, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The members sentenced the appellant to four years of confinement and a dismissal. The convening authority (CA) approved the sentence

as adjudged and, except for the dismissal, ordered the sentence executed.

The appellant raises two assignments of error. First, he claims that his conviction is legally and factually insufficient. Second, he claims that the CA's decision to refer the charge to a general court-martial against the recommendation of the Article 32 Investigating Officer (IO) and then declining to grant clemency when taking post-trial action, created an appearance of unlawful command influence (UCI).[1] We disagree.

After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant and the victim (MD) were both students when they met at flight school. Since she was ahead of the appellant in the training pipeline, they exchanged phone numbers in the event he had any questions "coming up through the school." Record at 398. About a month later, the appellant "Facebook friended" MD, and soon thereafter invited her to accompany him to a concert out of town. Uncomfortable with the idea since she did not know him well, MD instead invited the appellant to a pool party at her house with her roommates and some of their friends. MD thought that there might be a mutual interest in each other, but she wanted to get to know the appellant better "to see if there was a possibility of maybe anything going forward." *Id*. at 402. The appellant accepted her invitation.

At trial, MD testified that the appellant became visibly intoxicated during the party and made a number of physical advances towards her throughout the evening. She further testified that she rebuffed his advances. Other witnesses from the party also testified that the appellant was notably intoxicated and corroborated MD's claim that she rebuffed the appellant's advances. These same witnesses also testified that MD consumed very little alcohol that day and did not appear intoxicated.

MD and the appellant played a game of pool in the living room as the party was winding down. As guests were leaving, one

---

[1] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

2

offered the appellant a ride home but he declined.  Afterward, one of MD's roommates set up an air mattress in a spare room and told the appellant that he could sleep there.  After everyone else had left or gone to sleep, MD was cleaning the living room when the appellant came out of the spare room and asked her to come over so that he could "show [her] something."  *Id*. at 415.

At trial, MD testified that when she approached the appellant, he tried to kiss her.  When MD refused his advances, MD testified that the appellant grabbed her wrist and pulled her down onto the air mattress.  Then, according to MD, the appellant held both of her wrists above her head with one hand, while pulling her underwear to the side with his other hand and penetrating her vagina with his penis.

Additional facts are developed below as necessary.

## Legal and Factual Sufficiency

In his first assignment of error, the appellant asserts that the guilty finding is both legally and factually insufficient.  Specifically, the appellant cites a number of supposed weaknesses in the Government's case to include: that the Government failed to prove penetration; that MD lacked credibility due to her multiple inconsistent statements and her motive to misrepresent; and the lack of any corroborative evidence.  We disagree.

We review questions of legal and factual sufficiency *de novo*.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ).  Reasonable doubt, however, does not mean that the evidence must be free from conflict.  *Id.*

We are not persuaded by the appellant's claim that the Government failed to prove penetration.  Although MD described

3

the two acts of penetration as "rape," she was able to clarify, with follow-on questions from trial counsel, that the appellant had penetrated her vagina with his penis. Record at 421-22. Moreover, MD testified that the appellant ejaculated inside her and that she sought testing for possible pregnancy and sexually transmitted diseases.

Second, the appellant alleges that MD's delay in reporting, her inconsistent statements and motive to misrepresent all undermine the members' verdict. At trial, however, MD provided reasons to the members explaining: (1) that she delayed reporting because she did not want to be pulled from flight training; and (2) that she initially lied about certain facts because she had a hard time accepting and reporting that she had been raped. While civilian defense counsel cross-examined MD at length in these areas, other Government witnesses corroborated key aspects of MD's testimony. We also note that the military judge properly instructed the members to consider MD's credibility and prior inconsistent statements in reaching their verdict.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

### Unlawful Command Influence

In his second assignment of error, the appellant contends that the military judge erred in denying the defense's motion to dismiss the charge and specifications due to UCI. He argues that "the tremendous Congressional and public pressure being placed on Department of Defense and convening authorities . . . in cases where sexual assault is alleged" created the appearance of UCI in the appellant's court-martial. Appellant's Brief of 22 Jan 2014 at 9. In support, he points to two actions by the CA; referral to trial contrary to the Article 32 IO's recommendation and the CA's post-trial denial of the appellant's clemency request. *Id*. at 8-9.

"Congress and this court are concerned not only with eliminating actual unlawful command influence, but also with 'eliminating even the appearance of unlawful command influence

4

at courts-martial.'" *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979)). An accused has the initial burden of raising the issue of unlawful command influence. *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994). The defense must "show facts which, if true, constitute unlawful command influence, and that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citations omitted). The quantum of evidence necessary to raise the specter of unlawful command influence is "'some evidence.'" *Biagase*, 50 M.J. at 150 (quoting *United States v. Ayala*, 43 M.J. 296, 300 (C.A.A.F. 1995)); *see also United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003). The burden of disproving the existence of unlawful command influence or proving that it will not affect the proceeding does not shift until the defense meets its burden of production.

Allegations of unlawful command influence are reviewed *de novo*. *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006); *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999); *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). We necessarily begin our analysis by determining whether the defense met its initial burden of providing "some evidence" necessary to make a colorable showing of unlawful command influence.

In the appellant's case, the CA referred the charge and specifications to trial despite the Article 32 IO's recommendation to the contrary. The appellant contends that the CA did so because of pressure surrounding the issue of sexual assault in the military. At trial, the military judge concluded that the defense presented insufficient evidence of UCI to warrant shifting the burden of proof to the Government on the issue and, alternatively, he was convinced beyond a reasonable doubt that the charge and specifications were free from actual or apparent UCI.

We too conclude that the appellant has failed to meet his initial burden to provide "some evidence" of facts which, if true, constitute UCI. The appellant's unsubstantiated and ambiguous claim of pressure on the CA to refer the charge and specification to acourt-martial the appellant in the face of a contrary recommendation does not in and of itself suggest UCI. Nor does the CA's decision to deny clemency itself suggest that he was unlawfully influenced by more senior authority in the

5

chain-of-command.  Mere speculation that UCI occurred because of a specific set of circumstances is not sufficient.  *United States v. Ashby*, 68 M.J. 108, 128 (C.A.A.F. 2009).

## Conclusion

Accordingly, the findings and the sentence, as approved by the CA, are affirmed.

For the Court

R.H. TROIDL
Clerk of Court