**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Master Sergeant JOHN W. SAUNDERS, IV**
**United States Air Force**

**Misc. Dkt. No. 2014-15**

**17 April 2015**

SPCM convened at Osan Air Base, Republic of Korea.  Military Judge: Gregory O. Friedland.

Appellate Counsel for the Appellee:  Major Isaac C. Kennen.

Appellate Counsel for the United States:  Captain Richard J. Schrider; Colonel Katherine E. Oler; and Gerald R. Bruce, Esquire.

Before

HECKER, MITCHELL, and SARAGOSA
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

The government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, in this matter.  The government challenges the military judge's ruling to dismiss all charges and specifications with prejudice based on unlawful command influence.

*Procedural History*

The charges in this case stemmed from allegations made by several male members of the appellee's unit. At the time of the allegations, the appellee was the noncommissioned officer in charge of the Transient Alert Flight within the

51st Maintenance Squadron at Osan Air Base, Republic of Korea. The appellee was charged with maltreating two subordinates by pushing one and being verbally abusive to the other, alleged in violation of Article 93, UCMJ, 10 U.S.C. § 893. He was also charged with seven specifications of abusive sexual contact by touching the buttocks or groin of four other subordinates through their clothing, alleged in violation of Article 120, UCMJ, 10 U.S.C. § 920. The appellee was also charged with two specifications of assault consummated by a battery for touching the nipples of two subordinates through their clothing and with obstructing justice based on a conversation he had with one of the subordinates, alleged in violation of Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934. The charges were referred to a special court-martial by the commander of the 51st Fighter Wing.

Following arraignment, the defense raised a motion to dismiss the Article 120, UCMJ, offenses for unlawful command influence, based on public statements made by the President and the Secretary of Defense regarding sexual assault issues within the military, the congressional reaction to those issues, and the recent expansion of victims' rights within the military justice system. The gist of the defense motion was that the Article 120, UCMJ, charges were only preferred because of pressure on the command from the environment created by these public statements. The defense also filed a related motion to dismiss the Article 120, UCMJ, offenses for improper preferral and referral based on the preferring commander's alleged lack of knowledge about the underlying offenses. If he granted either defense motion, the defense also argued the military judge should dismiss the remaining charges as those charges did not warrant a special court-martial.

During a session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), regarding these motions, the squadron commander who preferred the charges, the special court-martial convening authority, the appellee, the defense paralegal, and four noncommissioned officers from the appellee's work center testified. After considering this testimony and two affidavits signed by the squadron commander and the special court-martial convening authority, the military judge dismissed the charges with prejudice on 7 October 2014 after concluding apparent unlawful command influence existed in the accusatory process.[1]

The government filed a motion asking the military judge to reconsider his ruling on 10 October 2014. Also filed on that day were 13 affidavits referenced in the motion, including one from Lieutenant Colonel (Lt Col) EW, the appellee's squadron commander. Through three additional e-mails between 10 October and 14 November 2014, the government provided the judge with three additional declarations not referenced in the motion. The defense filed a response, opposing the reconsideration

---

[1] As described below, this ruling was based on certain events that occurred prior to referral. At the same time, the military judge found the defense had failed to meet its low burden of producing "some evidence" of apparent or actual unlawful command influence regarding the public statements made by senior civilian and military officials.

request and attached several affidavits and character letters supporting the appellee. After hearing additional argument on 14 November 2014, the military judge denied the government's motion in a written ruling dated 26 November 2014.

That same day, the government served a notice of appeal on the military judge and defense counsel. The authenticated record of trial was docketed with this court on 16 December 2014.

*Jurisdiction*

Military appellate courts are courts of limited jurisdiction; "prosecution appeals are not favored and are available only upon specific statutory authorization." *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008). This court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, which authorizes the government to appeal "[a]n order or ruling . . . which terminates the proceedings with respect to a charge or specification" in a court-martial where a punitive discharge may be adjudged.

In order for this court to have jurisdiction to review a military judge's ruling, the government must have filed either a motion for reconsideration or notified the military judge of its appeal within 72 hours of the initial ruling. Article 62(a)(2), UCMJ; *United States v. Daly*, 69 M.J. 485, 486 (C.A.A.F. 2011). The military judge's initial ruling was issued at 1720 hours on 7 October 2014, making the government's motion for reconsideration or notice of appeal due before 1720 hours on 10 October 2014. The appellee argues the authenticated record of trial does not reflect that the motion for reconsideration was filed in a timely manner. In response, the government moved to admit six emails that purportedly show the timing of the government's reconsideration motion. We denied that request to supplement the record because the military judge's ruling denying the reconsideration motion states the government's motion was filed at 1359 hours on 10 October 2014. We therefore find the government's reconsideration motion[2] was filed in a timely manner, as was its notice of appeal following the military judge's denial of that motion.

The appellee also moved to dismiss the government's appeal because the military judge's ruling denying the motion for reconsideration is not properly within the record docketed with this court. He acknowledges the ruling is included within the docketed materials, and he does not contest the authenticity of this document. Instead, because it is not marked as an appellate exhibit or referenced in the exhibit list or transcript, the

---

[2] The appellee also contends that the appellee's motion for reconsideration submitted on 10 October 2014 was not "finalized" and thus was inadequate to toll the government's 72-hour deadline. Although the government provided the military judge with several affidavits after 10 October 2014 and did not have a copy of the motion and its exhibits ready for official submission at the 26 November 2014 hearing, the military judge considered the motion to be timely filed. We agree.

appellee contends this "stray document" is not properly part of the authenticated record, making the record before this court "incomplete."

Whether a record is complete is a question of law this court reviews de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014). Rule for Courts-Martial (R.C.M.) 908(b)(5) outlines the process by which the government will complete a record of proceedings for issues appealed pursuant to Article 62, UCMJ:

> Upon written notice to the military judge under subsection (b)(3) of this rule, trial counsel shall cause a record of the proceedings to be prepared. Such record shall be verbatim and complete to the extent necessary to resolve the issues appealed. . . . [T]he record shall be authenticated in accordance with R.C.M. 1104(a).

R.C.M. 1104(a)(2) describes who is responsible for authenticating a record of trial after punishment has been adjudged.[3] In an Article 62, UCMJ, appeal, no punishment has yet been adjudged. Under those circumstances, we find the following pertinent language from R.C.M. 1104(a) governs authentication: "A record is authenticated by the signature of a person specified in this rule who thereby declares that the record accurately reflects the proceedings."

At the conclusion of the Article 39(a), UCMJ, session held on 14 November 2014, the military judge told the parties he would take the reconsideration matter under advisement and issue a ruling via e-mail. He did not announce an appellate exhibit number to be assigned to that document. Based on a certification by trial counsel in the record, the military judge issued his ruling on 26 November 2014. According to the court reporter chronology, trial counsel and trial defense counsel were sent the transcript on 3 December 2014 and authenticated it on 4 December 2014. That same day, the military judge was sent the transcript. The military judge signed his authentication page on 9 December 2014, stating: "I examined the Record of Trial in the above-referenced case and find that it accurately reports the proceedings. I authenticate those pages of the Record of Trial in accordance with R.C.M. 1104."

The chronology indicates the record of trial was assembled that same day. Based on this, we conclude the military judge only reviewed the transcript pages and did not review the exhibits as part of that authentication.

---

[3] That individual is a military judge for a special court-martial where a bad-conduct discharge, confinement for more than 6 months, or forfeiture of pay for more than 6 months was adjudged. For cases where that level of punishment was not adjudged, the court reporter may authenticate the record with the permission of the military judge. Rule for Courts-Martial 1104(a)(2)(A), (B); Air Force Manual 51-203, *Records of Trial*, Chapter 12 (27 June 2013).

Notably, this is not a case where an appellate exhibit is missing from the record of proceedings. During review under Article 66, UCMJ, the omission of an exhibit whose content is either qualitatively or quantitatively substantial can make a record of trial incomplete and preclude affirmance of certain adjudged sentences if the government cannot reconstruct the missing material. *See Davenport*, 73 M.J. at 377; *United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000); *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982).

Here, the appellate exhibit is not missing. It is included in the record of proceedings assembled by the court reporter and trial counsel and docketed with this court. The exhibit has indicia of authenticity and the appellee does not contend otherwise. Under these circumstances, we conclude it is legitimately part of the record and that record is compliant with the requirements of R.C.M. 908(b)(5).

*Unlawful Command Influence*

Article 37(a), UCMJ, 10 U.S.C. § 837(a) states: "No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." Unlawful "[c]ommand influence is the mortal enemy of military justice." *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986). Congress and courts "are concerned not only with eliminating actual unlawful command influence, but also with 'eliminating even the appearance of unlawful command influence at courts-martial.'" *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006) (quoting *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979).

"Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an intolerable strain on public perception of the military justice system." *Lewis*, 63 M.J. at 415 (internal quotation marks and citation omitted). Because the focus is on the perception of fairness "as viewed through the eyes of a reasonable member of the public. . . . [T]he appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id.*

"[O]nce unlawful command influence is raised, 'we believe it incumbent on the military judge to act in the spirit of the Code by avoiding even the appearance of evil in his courtroom and by establishing the confidence of the general public in the fairness of the court-martial proceedings.'" *United States v. Stoneman*, 57 M.J. 35, 42 (C.A.A.F. 2002) (quoting *Rosser*, 6 M.J. at 271). This call to maintain the public's confidence that military justice is free from unlawful command influence follows from the fact that even the "appearance of unlawful command influence is as devastating to the military justice

system as the actual manipulation of any given trial." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991).

At trial, the burden of raising the issue of unlawful command influence rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The defense must present "some evidence" of facts which, if true, constitute unlawful command influence, and demonstrate that this alleged unlawful command influence has a logical connection to potential unfairness at the court-martial. *Id.* Once the issue is cognizably raised in this manner, "the appearance or existence of unlawful command influence creates a rebuttable presumption of prejudice." *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994). The government can rebut that presumption by proving beyond a reasonable doubt that (1) the predicate facts do not exist, (2) those facts do not constitute unlawful command influence, or (3) the unlawful command influence will not affect the proceedings. *Biagase*, 50 M.J. at 150.

*Standard of Review*

In an Article 62, UCMJ, appeal, this court "reviews the military judge's decision directly and reviews the evidence in the light most favorable to the prevailing party at trial." *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014). "[T]he military judge's findings of fact are reviewed under a clearly-erroneous standard and the question of command influence flowing from those facts is a question of law reviewed *de novo*." *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994).

Because this review is occurring pursuant to Article 62, UCMJ, we cannot find our own facts in addition to, or contrary to, the facts found by the military judge, nor can we substitute our interpretation of his facts. *United States v. Baker*, 70 M.J. 283, 287–88 (C.A.A.F. 2011); *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007); *United States v. Terry*, 66 M.J. 514, 517 (A.F. Ct. Crim. App. 2008). Under these circumstances, "the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004) (citations and internal quotation marks omitted). "To give due deference to the trial bench, a determination of fact should not be disturbed unless it is unsupported by the evidence of record or was clearly erroneous." *Id.* (citations and internal quotation marks omitted). "In entering a finding of fact, the military judge must rely on evidence of record which fairly supports that finding; in the absence of *any* such evidence, the finding is error as a matter of law." *United States v. Bradford*, 25 M.J. 181, 184 (C.M.A. 1987).

When a military judge has ordered remedial action after finding unlawful command influence, this court reviews that decision for an abuse of discretion. *Gore*, 60 M.J. at 187. A military judge has broad discretion and a range of choices in crafting a remedy to remove the taint of unlawful command influence, and this court will not

reverse so long as his or her decision remains within that range. *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010). In the Article 62, UCMJ, context, a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect. *Wicks*, 73 M.J. at 98. "The abuse of discretion standard 'calls for more than a mere difference of opinion. The challenged action must be arbitrary . . . , clearly unreasonable, or clearly erroneous.'" *Id.* (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)).

*Findings of Fact*

The military judge's initial ruling dismissing the charges and specifications and his ruling denying the government's motion for reconsideration included findings of fact. Applying the standards described above, we hold that these findings, as described below, are fairly supported by evidence in the record and are not clearly erroneous.[4]

Over a year before preferral and referral occurred in the appellee's case, the President, on 7 May 2013, stated he had "no tolerance" for sexual assault. He continued that he "expect[ed] consequences" for offenders. He further assured victims of sexual assault:

> I want them to hear directly from their commander in chief that I've got their backs . . . . [W]e're not going to tolerate this stuff and there will be accountability . . . . If we find somebody's engaging in this, they've got to be held accountable, prosecuted, stripped of their positions, court-martialed, fired, dishonorably discharged. Period. It's not acceptable.

That same day, the Secretary of Defense also made comments at a press conference where he discussed the need for a culture change in the military and a plan to hold commanders accountable "for any perceived failure to properly prevent or respond to allegations of sexual assault within their units." He stated commanders at all levels would be held accountable for any perceived failure to properly prevent or respond to allegations of sexual assault. Like the President's remarks, these comments were widely publicized. Since that time, clarifying comments have been made on behalf of the President and the Secretary of Defense.

---

[4] Although the government contends that certain affidavits and testimony contain information that is contrary to the facts found by the military judge, a "military judge does not err merely because some evidence points in the opposite direction" of his factual conclusion. *United States v. Fry*, 70 M.J. 465, 471 (C.A.A.F. 2012); *United States v. Morgan*, 40 M.J. 389, 394 (C.M.A. 1994) ("Where there are underlying factual issues requiring resolution of conflicting testimony, the military judge's findings of fact will be upheld 'if fairly supported in the record' . . . .").

The charges in this case were preferred by Lt Col EW, the squadron commander, on 16 July 2014, and referred by the special court-martial convening authority, Colonel (Col) BL, on 24 July 2014.

Through a sworn affidavit and in-court testimony, Lt Col EW stated he was aware of the public comments made by the President, Secretary of Defense, the Air Force Chief of Staff, members of Congress, and other senior military leaders regarding the handling of sexual assault in the military, as well as media reporting about those issues. Lt Col EW stated that the public comments did not influence his decision to prefer the charges in this case and that he was not aware of any comments specifically directed at this case. He testified that he had read the report of investigation (including the statements of the victims), he believed the allegations were true, he felt no pressure to prefer charges, and he felt the number of complainants tipped the scales in favor of resolving the allegations with a court-martial.

Col BL was the special court-martial convening authority in this case. Through a sworn affidavit and in-court testimony, Col BL stated he was aware of the public comments described above, but they did not influence his decision to refer the case to trial. Additionally, Col BL was an acquaintance of then-Lt Col Wilkerson and then-Lieutenant General Franklin, the latter who was his commander at Weapons School.[5] Col BL stated none of the public matters about the Wilkerson case influenced his decision to refer the charges to trial. He reviewed the entire report of investigation, the charges preferred by Lt Col EW, and believed the report of investigation matched the preferred charges. He did not discuss this case with Lt Col EW.

In mid-December 2013, seven months before the preferral and referral of charges, a meeting was held in the appellee's work center at the Transient Alert Flight. According to Technical Sergeant (TSgt) MK, a co-worker of the appellee, Lt Col EW and senior noncommissioned officer leadership came to the work center. TSgt MK heard the commander say, "If someone violates the UCMJ, I will remove them from the work center." At the end of this meeting, Lt Col EW asked if anyone had any questions. In response, TSgt MK asked the commander about a suspected UCMJ violation in the work center (referring to an assault that did not involve the appellee) and what could be done about it. This statement was a shock to most of the people who heard it. It appeared to catch Lt Col EW off guard, and the meeting ended. The First Sergeant's response to this assault allegation was "I typically let the sections handle it themselves," or words to that effect. Another co-worker, Staff Sergeant BW, recalled the statement as, "Let the First Sergeant handle it," or words to that effect.

---

[5] We note that while not part of the findings of fact, then-Lieutenant General Franklin was the convening authority whose decision to set aside then-Lieutenant Colonel (Lt Col) Wilkerson's sexual assault conviction garnered much interest in the media and Congress.

Another co-worker, Master Sergeant (MSgt) CK was aware that a meeting was held by the commander with the rest of the squadron's senior noncommissioned officers. MSgt CK remembers hearing the commander talk about an investigation but does not remember any discussion about UCMJ violations. MSgt CK did recall a discussion about removing section leadership without the appellee's name being mentioned.

Lt Col EW denied holding such a meeting in the work section where a discussion ensued regarding violations of the UCMJ that would result in an individual being removed from the work section. When asked whether he had ever briefed members of the appellee's work section that the appellee was guilty of sexual assault, Lt Col EW first testified he could not recall that happening and then denied giving such a briefing. In an affidavit submitted as part of the government's reconsideration motion, Lt Col EW recalled a meeting with the Transient Alert Flight occurring after the appellee was removed from the work section.[6]

The appellee was removed from the work section the day after the work section meeting. In an affidavit submitted as part of the government's reconsideration motion, Lt Col EW stated he "did not direct the removal of [the appellee] from his section" but during his testimony two days earlier, Lt Col EW remembered directing the removal of the appellee from the work section.[7] In another affidavit submitted as part of the reconsideration motion, Chief Master Sergeant (CMSgt) CF, the squadron superintendent, stated, "I was the one to make the decision to remove [the appellee] from his unit. Lt Col [EW] did not remove him, but concurred with my decision after the fact." CMSgt CF further stated, "Matters regarding enlisted personnel fall under me and I backbriefed my commander after I made the decision."[8] He also stated in his affidavit that "the commander evaluates each case on its merits and decides based on the facts of each case, often asking my input as well, and then decides how to go forward."

*Conclusions of Law*

1. Finding of Unlawful Command Influence

The military judge concluded the defense had not met its low burden of showing there is "some evidence" of apparent or actual unlawful command influence with regard

---

[6] In his ruling on reconsideration, the military judge found Lt Col EW "quibbled in his testimony" and provided conflicting information in his testimony and affidavit, leading the military judge to "view [his statements] with skepticism."

[7] See footnote 6.

[8] In his discussion of the motion, the military judge expressed concerned about CMSgt CF's implication that he controlled matters affecting enlisted personnel. The military judge concluded this was incorrect as "[c]ommand is exercised by virtue of office and the special assignment of officers . . . who are . . . eligible by law to exercise command." Also, the military judge was "uncertain as to who is making decision[s] regarding discipline in the squadron," given the testimony of Lt Col EW and the affidavits submitted by Chief Master Sergeant (CMSgt) CF and Staff Sergeant BW.

to statements by senior leaders as reported in the media. He found no evidence was presented that anyone has tried to influence the court-martial or the members selected to sit on the panel and that there was no indication that any witness has been unwilling to testify due to any of the media accounts provided to the military judge.

However, through his initial ruling and his ruling denying the government's request for reconsideration, the military judge concluded the appellee had met his burden of raising "some evidence" of apparent unlawful command influence in how the case was brought to trial.[9] He found this burden was met by the following facts[10] which, in his view, constituted "some evidence" of unlawful command influence:

(1) The appellee's commander held a meeting before trial where he stated that anyone who violated the UCMJ would be removed from the duty section, and then the appellee was removed from the duty section; and

(2) The accused testified about statements made by the commander to the effect of, "How would I look to leadership if I did not push this issue?"

After shifting the burden to the government, the military judge stated in both rulings that he was "not convinced beyond a reasonable doubt that the comments upon which [he] based [his] determination (1) are not true, (2) do not constitute unlawful command influence, or (3) will not affect the proceedings." He also stated:

> In consideration of all the evidence considered on the matter, the inherent probability or improbability of the testimony, whether the testimony is supported or contradicted by other evidence in the case, and the credibility of the witnesses, this Court is not convinced beyond a reasonable doubt that the preferral of charges in this case was not tainted by the danger of Unlawful Command Influence.

The military judge did not expressly elaborate on how these facts constituted apparent unlawful command influence relative to the case.[11] Conducting our de novo review of the question of law about whether unlawful command influence flows from the facts found by the military judge, we find the facts insufficient to support a conclusion that "an objective, disinterested observer, fully informed of all the facts and

---

[9] At various places in his rulings, the military judge uses phrases and language more indicative of a finding of actual unlawful command influence. Because the parties on appeal both consider his overall ruling to be one of apparent unlawful command influence, we also do so.

[10] In finding these facts, the military judge also found the government failed to prove beyond a reasonable doubt that these predicate facts were not true. As noted above, we do not find that conclusion to be clearly erroneous.

[11] The military judge described the defense as having met its burden of presenting some evidence of apparent unlawful command influence "in the accusatory process"; "in the way this case was brought to trial"; and "in the preferral of charges."

circumstances, would harbor a significant doubt about the fairness of the proceeding." *Lewis*, 63 M.J. at 415.

In reaching his decision, the military judge concluded the commander had expressed his determination of the appellee's guilt through his statement at the duty section and the subsequent removal of the appellee, finding the situation to be similar to that found in *United States v. Douglas*, 68 M.J. 349 (C.A.A.F. 2010). He also noted that (1) only one enlisted person who was part of the appellee's flight when this statement was made submitted a character statement for the appellee as part of the defense response to the motion for reconsideration, and that this person had since left the unit; and (2) the other character letters and affidavits submitted by the defense were provided by contractors "who owe no duty or allegiance to the commander, the Chief, or the First Sergeant."

Statements or actions by those in the chain of command that attempt to or tend to intimidate or dissuade witnesses from testifying can constitute unlawful command influence and can violate an accused's right to have access to favorable evidence, in violation of the Sixth Amendment[12] and Article 46, UCMJ, 10 U.S.C. § 846. *See United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994); *see also United States v. Rivers*, 49 M.J. 434, 443 (C.A.A.F. 1998); *United States v. Drayton*, 45 M.J. 180, 182 (C.A.A.F. 1996); *United States v. Gleason*, 43 M.J. 69, 74–75 (C.M.A. 1995); *United States v. Ayala*, 43 M.J. 296, 299 (C.A.A.F. 1995); *United States v. Loving*, 41 M.J. 213, 228–29 (C.A.A.F. 1994). In his initial ruling, the military judge stated he found that "evidence exists regarding implied threats to potential witnesses in this case," but he did not link any specific factual findings to that conclusion. He also did not expressly link the commander's actions to the absence of additional character letters from flight members, nor did the defense list any witnesses who had been chilled by this incident. Additionally, in his initial ruling, the military judge concluded there was no evidence that the defense had been hindered in any way in preparing for trial. We recognize it can be "risky for a person in authority to comment on the merits of a pending case, especially in the presence of subordinates." *Drayton*, 45 M.J. at 182. However, constrained by Article 62 UCMJ, to the factual findings of the military judge, we find that these facts do not rise to the level of unlawful command influence or create the appearance of it.[13]

Furthermore, as found by the military judge, the appellee faced charges of cruelty and maltreatment, abusive sexual contact, assault and battery, and obstruction of justice, based on allegations raised by his co-workers and subordinates. In our view, an

---

[12] U.S. CONST. Amend. VI.

[13] In assessing the appearance of unlawful command influence, we are to consider the perception of an objective observer who is "fully informed of all the facts and circumstances." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006). Because this is an Article 62, UCMJ, 10 U.S.C. § 862, appeal, we conclude those "facts and circumstances" are solely those found by the military judge.

objective, disinterested, but informed observer would not consider the commander's decision to prefer such charges and remove the appellee from the duty section to be unfair. Although the military judge found the appellee's commander said, "How would it look to leadership if I did not push this issue?", the military judge also found no evidence of any influence from statements made by senior leaders.

## 2. Dismissal of charges

Even if the facts found by the military judge rise to the level of apparent command influence, we find he abused his discretion in dismissing the charges with prejudice.

The military judge took this action after he found beyond a reasonable doubt "there [was] no way to prevent the unlawful command influence from adversely affecting the findings or sentence" relative to all the charges in the case. In reaching this conclusion, he noted the following:

(1) The normal duty assignment to Osan Air Base is 365 days. "[R]e-preferring charges, referral, and trying the case [would] cause an unreasonable hardship on the military members and their families (both the accused and witnesses)."

(2) The same base leadership from the original preferral was still in place.

(3) He considered the government's suggestion that a newly arrived group commander could review the allegations anew but disapprovingly noted that this commander had already been briefed about the prior preferral and the wing commander's referral.

(4) The government failed to convince him beyond a reasonable doubt that moving the case outside of Seventh Air Force or Pacific Air Forces would alleviate the concerns of unlawful command influence.

(5) The government failed to convince him beyond a reasonable doubt that the comments made by Lt Col EW or CMSgt CF would not affect a trial preferred and referred by another command.

(6) Arguably, anyone providing a statement or affidavit in support of the appellee would have to respond to the CMSgt CF, even if another command elected to prefer and refer the charges to trial.

Our superior court has "looked with favor on military judges taking proactive, curative steps to remove the taint of unlawful command influence and ensure a fair trial," and a military judge may consider dismissal "as a last resort." *Douglas*, 68 M.J. at 354. Because dismissal of charges is a drastic remedy, courts must determine if alternative

remedies are available. *Gore*, 60 M.J. at 187. Such an action "is appropriate when an [accused] would be prejudiced or no useful purpose would be served by continuing the proceedings." *Id.* (citing *United States v. Green*, 4 M.J. 203, 204 (C.M.A. 1978). However, "[w]hen an error can be rendered harmless, dismissal is not an appropriate remedy." *Id.* (citing *United States v. Mechanik*, 475 U.S. 66 (1986)).

In his reconsideration ruling, the military judge stated he had considered the many remedies available to military judges, but he only discussed two potential remedies—having a different commander on base review the evidence for potential preferral or sending the case to another command for potential preferral. He rejected both options, finding that anyone providing evidence in support of the appellee would still be affected by the comments of the commander and the chief, regardless of who preferred and referred the charges. Even if these comments rose to the level of unlawful command influence, the military judge did not explain why these options would not be sufficient to cure that problem.

Also, the military judge did not discuss other curative steps available to him that could have cured the appearance of unlawful command influence in this case, or why those remedies would be insufficient. To address any intimidation of witnesses, he had the option of directing remedial measures to assure flight members that there would be no adverse ramifications from their support of the appellee. *See, e.g.*, *United States v. Sullivan*, 26 M.J. 442, 443 (C.M.A. 1988); *Douglas*, 68 M.J. at 353. He could have taken steps to ensure the defense had full access to witnesses. *See Sullivan*, 26 M.J. at 443; *United States v. Stirewalt*, 60 M.J. 297, 299 (C.A.A.F. 2004). He could have dismissed the charges without prejudice, while noting his belief that any new commander who prefers the charges should not be informed about the problematic history of the case. *See, e.g.*, *United States v. Villareal*, 52 M.J. 27, 31 (C.A.A.F. 1998) (finding that transfer of a case to an impartial convening authority cured any appearance of unlawful command influence).

Because the military judge did not fully discuss the alternative remedies and it is not clear to us that those alternatives would have been insufficient to restore public confidence in the case, we find he abused his discretion by choosing the "last resort" option of dismissal with prejudice. *See United States v. Flesher*, 73 M.J. 303, 311–12 (C.A.A.F. 2014) (finding that a military judge's analysis and application of the law clearly warrants deference if he places it on the record and less deference will be accorded if he does not do so).

*Conclusion*

The military judge's ruling to dismiss the case with prejudice is vacated, and the record will be returned to the military judge for action consistent with this opinion.

Accordingly, the appeal of the United States under Article 62, UCMJ, is hereby **GRANTED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court